1  PAUL HASTINGS LLP
   Todd M. Schwartz (Cal. Bar No. 288895)
2  Will Clark Farmer (Cal. Bar No. 329170)
   1117 S. California Avenue
3  Palo Alto, California 94304
   Telephone:    (650) 320-1800
4  Facsimile:    (650) 320-1900
   E mail        toddschwartz@paulhastings.com
5                willfarmer@paulhastings.com

6  Nathan S. Gimpel (*pro hac vice* admission pending)
   Matthew Smart (*pro hac vice* admission pending)
7  71 South Wacker Drive, Suite 4500
   Chicago, Illinois 60606
8  Telephone:    (312) 499-6000
   Facsimile:    (312) 499-6100
9  E mail        nathangimpel@paulhastings.com
                 matthewsmart@paulhastings.com
10
   *Proposed Attorneys for Debtor and*
11 *Debtor in Possession*

12              UNITED STATES BANKRUPTCY COURT

13      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

14
   In re,                                    Case No. 21-51050 (SLJ)
15
   SVXR, Inc., a Delaware corporation,[1]    Chapter 11
16
                                             **DEBTOR'S FIRST DAY EMERGENCY**
17                                           **MOTION PURSUANT TO 11 U.S.C. §§**
                                             **105, 361, 362, 363, 364, 503, AND 507, AND**
18              Debtor.                       **FED. R. BANKR. P. 2002, 4001, 6003,**
                                             **6004, AND 9014 FOR ENTRY OF**
19                                           **INTERIM AND FINAL ORDERS:**
                                             **(I) AUTHORIZING THE DEBTOR TO**
20                                           **(A) OBTAIN SENIOR SECURED,**
                                             **SUPERPRIORITY, POST-PETITION**
21                                           **FINANCING, AND (B) UTILIZE CASH**
                                             **COLLATERAL OF PREPETITION**
22                                           **SECURED PARTIES; (II) GRANTING**
                                             **LIENS AND SUPERPRIORITY**
23                                           **CLAIMS; (III) MODIFYING THE**
                                             **AUTOMATIC STAY;**
24                                           **(IV) SCHEDULING FINAL HEARING;**
                                             **AND (V) GRANTING RELATED**
25                                           **RELIEF**

26

27
   _____
28 [1]  The last four digits of SVXR, Inc.'s federal tax identification number are (1893).  The mailing address for
        SVXR, Inc. is 90 Bonaventura Drive, San Jose, California 95134.

DIP FINANCING AND CASH COLLATERAL
MOTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Date:    August 10, 2021
Time:    11:00 a.m.
Crtrm.:  9, via Zoom

Judge:  Honorable Stephen L. Johnson
         United States Bankruptcy Court
         280 South First Street
         San Jose, CA 95113

# **TABLE OF CONTENTS**

**Page**

INTRODUCTORY STATEMENT..................................................................................................1

I.  JURISDICTION AND VENUE ...................................................................................2

II.  NECESSITY FOR AND TERMS OF DIP LOAN AND USE OF CASH COLLATERAL ..........3

III.  CERTIFICATION.......................................................................................................9

MEMORANDUM OF POINTS AND AUTHORITIES...............................................................10

I.  BACKGROUND........................................................................................................10

II.  THE DEBTOR'S CAPITAL STRUCTURE .............................................................10

III.  PROPOSED DIP FINANCING ...............................................................................11

    A.  The DIP Loans and Use of Cash Collateral Are Critical to Allow the Debtor's Proposed Sale Process to Occur ....................................................................11

    B.  The Debtor's Selection of Legalist as DIP Lender ..........................................12

    C.  The DIP Loans ...............................................................................................13

IV.  REQUIRED DISCLOSURES FOR CASH COLLATERAL AND FINANCING MOTIONS ...............................................................................................................14

V.  BASIS FOR RELIEF REQUESTED ........................................................................23

    A.  The Court Should Approve the DIP Loans under Sections 364(c) and 364(d)(1) ...........23

        1.  SVXR has Carried its Burden Under Section 364(c)...........................................24

        2.  Because All of the Debtor's Secured Creditors Are Adequately Protected, SVXR has Carried its Burden under Section 364(d)(1) ......................................27

    B.  The Proposed Interim DIP Order Should be Granted ......................................29

        1.  The Court Should Conduct a Preliminary Expedited Hearing ......................29

        2.  The Debtor Requires Immediate Access to the DIP Loans..................................30

    C.  The DIP Lender Should be Deemed a Good Faith Lender under Section 364(e)............31

    D.  Because All of the Debtor's Secured Creditors Are Adequately Protected, the Court Should Grant the Debtor Access to Cash Collateral Under Bankruptcy Code Section 363(c)(1) on a Final Basis .................................................................31

    E.  The Scope of the Carve-Out Is Appropriate...................................................32

    F.  The Automatic Stay Should Be Modified on a Limited Basis .........................33

    G.  Bankruptcy Rule 4001(a)(3) Should Be Waived ............................................33

    H.  Bankruptcy Rule 6003 Has Been Satisfied ....................................................33

VI.  REQUEST FOR BANKRUPTCY RULE 6004(A) AND (H) WAIVERS....................34

VII.  NOTICE....................................................................................................................34

VIII.  CONCLUSION .........................................................................................................34

DIP FINANCING AND CASH COLLATERAL MOTION

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Aeropostale, Inc.*,
   Case No. 16-11275 (SHL) (Bankr. S.D.N.Y. May 06, 2016)....................................................33

*In re Ames Dep't Stores, Inc.*,
   115 B.R. 34 (Bankr. S.D.N.Y. 1990) ........................................................................24, 25, 32

*In re Boodrow,*
   192 B.R. 57 (Bankr. N.D.N.Y. 1995) .......................................................................................28

*In re Blue Earth, Inc. et al.*,
   Case No. 16-30296 (Bankr. N.D. Cal. Apr. 29, 2016)..............................................................26

*In re Capitol Station 65, LLC*,
   No. 17-23627-B-11, 2018 WL 333863 (Bankr. E.D. Cal. Jan. 8, 2018) .................................25

*In re Chauncy Street Assoc. Ltd. Partnership*,
   107 B.R. 7 (Bankr. D. Mass. 1989)..........................................................................................28

*In re Farmland Indus., Inc.*,
   294 B.R. 855 (Bankr. W.D. Mo. 2003)......................................................................................24

*In re Fleetwood Enterprises, Inc., et al.*,
   Case No. 09-14254-MJ (Bankr. C.D. Cal. Apr. 1, 2009) .........................................................33

*In re Gardens Reg'l Hosp.*,
   No. 2:16-BK-17463-ER, 2017 WL 7101146 (Bankr. C.D. Cal. July 28, 2017).................24, 33

*In re Imperial Toy LLC*,
   Case No. 19-52335 (Bankr. N.D. Cal. Nov. 20, 2019) ......................................................26, 33

*In re Kendall*,
   Case No. 04-85449, 2005 Bankr. LEXIS 1765, 2005 WL 2293573
   (Bankr. C.D. Ill. 2005) .............................................................................................................28

*In re Los Angeles Dodgers LLC*,
   457 B.R. 308 (Bankr. D. Del. 2011) ...................................................................................24, 25

*In re McCombs Properties VI, Ltd.*,
   88 B.R. 261 (Bankr. C.D. Cal. 1988).......................................................................................28

*In re Mellor*,
   734 F.2d 1396 (9th Cir. 1984)............................................................................................28, 29

DIP FINANCING AND CASH COLLATERAL MOTION

*In re Newzoom, Inc.*,
    Case No. 15-31141 (Bankr. N.D. Cal. Oct. 15, 2015) ............................................................26

*In re Rdio, Inc.*,
    Case No. 15-31430 (Bankr. N.D. Cal. Dec. 10, 2015)............................................................26

*In re Reading Tube Indus.*,
    72 B.R. 329 (Bankr. E.D. Pa. 1987).......................................................................................25

*In re Republic Airways Holdings Inc.*,
    No. 16-10429(SHL), 2016 WL 2616717 (Bankr. S.D.N.Y. May 4, 2016) .............................24

*In re Seriosa*,
    Case No. 2:16-BK-14276-RK, 2016 WL 3478953
    (Bankr. C.D. Cal. June 20, 2016).............................................................................................30

*In re Simasko Prod. Co.*,
    47 B.R. 444 (D. Colo. 1985) ...................................................................................................25

*In re Snowshoe Co.*,
    789 F.2d 1085 (4th Cir. 1986)..................................................................................................25

*In re Sterling Mining Co.*,
    No. 09-20178-TLM, 2009 WL 2514167 (Bankr. D. Idaho Aug. 14, 2009) ............................24

*In re SunEdison, Inc.*,
    Case No. 16-10992 (SMB) (Bankr. S.D.N.Y. Apr. 26, 2016) .................................................33

*United Savings Association v. Timbers of Inwood Forest Associates*,
    108 S.Ct. 626 (1988) ................................................................................................................28

*Weinstein, Eisen, Weiss LLP* v. *Gill (In re Cooper Common, LLC)*,
    424 F.3d 963 (9th Cir. 2005).....................................................................................................31

**Statutes**

11 U.S.C.
    § 101....................................................................................................................................... 1
    § 105....................................................................................................................................2, 34
    § 361..............................................................................................................2, 27, 28, 34
    § 362..............................................................................................................2, 27, 34
    § 363........................................................................................................................ *passim*
    § 364........................................................................................................................ *passim*
    § 503....................................................................................................................2, 4, 13, 24
    § 506.......................................................................................................................................28
    § 507........................................................................................................................ *passim*

DIP FINANCING AND CASH COLLATERAL MOTION

# TABLE OF AUTHORITIES
(continued)

|  | Page(s) |
|---|---|
| § 544 | 23 |
| § 545 | 23 |
| § 547 | 23 |
| § 548 | 23 |
| § 549 | 23 |
| § 552 | 22 |
| § 553 | 23 |
| § 723 | 23 |
| § 724 | 23 |
| § 726 | 22 |
| § 1107 | 3, 10 |
| § 1108 | 3, 10, 31 |

28 U.S.C.
| § 157 | 2 |
| § 1334 | 2 |
| § 1930(a) | 21 |

## Other Authorities

Bankr. Local Rules for the U.S. Dist. Ct. for the Northern Dist. of Cal.
| R. 4001-2 | 34 |
| R. 5011-1(a) | 2 |

Fed. R. Bankr. P.
| R. 2002 | 2, 34 |
| R. 4001 | *passim* |
| R. 6003 | 2, 31, 33, 34 |
| R. 6004 | 2, 34 |
| R. 7008 | 2 |
| R. 9014 | 2 |
| R. 9024 | 9 |

*Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*,
| General Order 24 (N.D. Cal.) | 2 |

| United States Constitution Article III | 2 |

DIP FINANCING AND CASH COLLATERAL MOTION

The above-captioned debtor and debtor-in-possession ("SVXR" or the "Debtor") [2] respectively submits this motion (this "Motion") for entry of an interim order (the "Interim DIP Order"), in substantially the form attached hereto as **Exhibit A**, and for the entry of a final order (the "Final DIP Order" and together with the Interim DIP Order, the "DIP Orders"), following a final hearing on this Motion, which seeks, among other things:

(a) authorization for the Debtor to obtain post-petition financing in the aggregate principal amount of $2,000,000 (the "DIP Loans") from Legalist DIP GP, LLC, ("Legalist" or the "DIP Lender"), to enable the Debtor to pay the expenses in the 13-week DIP Loans budget (the "Budget") attached hereto as **Exhibit B**, substantially in accordance with the terms of the Debtor-in-Possession Term Loan Credit Agreement (the "DIP Credit Agreement"), attached hereto as **Exhibit C** and as supplemented or modified by the DIP Orders;

(b) authorization for the Debtor to use cash collateral (the "Cash Collateral"), as such term is defined in 11 U.S.C. § 363(a), in accordance with the Budget, and all future budgets, pursuant to the terms of the DIP Orders;

(c) pursuant to sections 364(c)(1), (c)(2), and (c)(3) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), the grant to DIP Lender of valid, enforceable, non-avoidable, fully perfected, and continuing liens on and security interests in and to all assets of the Debtor (the "DIP Liens") to secure all obligations of the Debtor to the DIP Lender on account of the DIP Loans and all interest, fees, and costs accrued thereon, with such DIP Loans secured by a first-priority lien against substantially all assets of the Debtor (the "DIP Collateral");

(d) pursuant to 11 U.S.C. § 507(b), the grant to DIP Lender of a superpriority administrative expense priority claim against the Debtor's estate (the "DIP Superpriority Claims") on account of all DIP Obligations (as defined herein), with any such DIP Superpriority Claims to have priority over any and all administrative expenses, subject to the Carve-Out (as defined herein), and claims asserted against the Debtor or its estate;

---

[2]   All capitalized terms not defined herein have the meaning ascribed to them in the *Declaration of Daniel Trepanier in Support of First Day Motions and Related Relief* (the "First Day Declaration").

DIP FINANCING AND CASH MANAGEMENT MOTION

(e) pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the scheduling of an interim hearing (the "Interim Hearing") on this Motion for the Court to consider entry of the Interim DIP Order, which, among other things, (i) authorizes the Debtor to obtain the DIP Loans from DIP Lender on an interim basis, (ii) authorizes the Debtor's use of the Cash Collateral of the Prepetition Secured Parties[3]; and (iii) grants the liens and claims to DIP Lender provided for above;

(f) the scheduling of a final hearing (the "Final Hearing") on the Motion on a date and time that is convenient for the Court; and

(g) waiver of any applicable stay (including under Bankruptcy Rule 6004) and provision for the immediate effectiveness of the Interim DIP Order.

In support of this Motion, the Debtor respectfully represents the following:

## I.     JURISDICTION AND VENUE

The United States Bankruptcy Court for the Northern District of California (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "Local Rules").  The Debtor confirms its consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

The bases for the relief requested herein are sections 105(a), 361, 362, 363, 364, 503, and 507 of the Bankruptcy Code, and Rules 2002, 4001, 6003, 6004, and 9014 of the Bankruptcy Rules.

---

[3]   The Prepetition Secured Parties include:  (a) the U.S. Small Business Administration ("SBA"), which holds a lien on substantially all of the Debtor's assets on account of the SBA EIDL Loan with approximately $500,000.00 in principal amount outstanding; and, (b) the holders of the Debtor's secured notes, which holders have a security interest in substantially all of the Debtor's assets on account of the Secured Notes with aggregate indebtedness outstanding of approximately $8,200,000.00.  These Noteholders include:  (i) The Levy Family Trust dated February 18, 1983; (ii) Grand Process Technology Corporation; (iii) ASE Test Limited; (iv) David Adler; (v) Michael Wu; (vi) Scott Jewler; (vii) Maureen Lamb; (viii) The McWhirter Living Trust; (ix) The Franklin/Malnekoff Trust, Gregg E. Franklin, and Mara B. Malnekoff, and their successors, as Trustee, under Trust Agreement dated January 12, 2016; (x) Remon Kaldani; (xi) Sunil Kaul; and (xii) Robert Maire.

DIP FINANCING AND CASH COLLATERAL MOTION

The Debtor also submits this Motion pursuant to the Court's *Guidelines for Cash Collateral and Financing Motions and Stipulations* (the "Guidelines").[4]

## II. NECESSITY FOR AND TERMS OF DIP LOANS AND USE OF CASH COLLATERAL

Founded in 2013, the Debtor is a developer and manufacturer of high-resolution, automated x-ray inspection and metrology equipment for businesses in the semiconductor and advanced electronics market. The Debtor also provides data-analytics software and field-support services to its customers in the semiconductor-fabrication industry.

On August 4, 2021, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A description of the Debtor and its business, and the facts and circumstances supporting the Debtor's chapter 11 case (the "Chapter 11 Case"), are set forth in greater detail in the First Day Declaration, filed contemporaneously herewith. The Debtor continues to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Case. Additionally, the Office of the United States Trustee for the Northern District of California (the "U.S. Trustee") has not appointed an official committee of unsecured creditors (the "Committee").

The Debtor has an immediate need for access to its Cash Collateral and access to funding from the DIP Lender in the principal amount of up to $2.0 million following entry of the Interim DIP Order. As discussed in the First Day Declaration, the Noteholders demanded repayment of the Secured Notes in May 2021 and have been exercising their rights under the Notes Agreements since then, including taking steps to foreclose on the Debtor's assets.

The Debtor filed the Chapter 11 Case primarily to facilitate a going-concern sale pursuant to the marketing process described in the concurrently filed Declaration of Christopher T. Grubb (the "Grubb Declaration"), a Managing Director and the Head of M&A and Restructuring for the Western Region of Greenhill & Co., LLC ("Greenhill"), and the Debtor's associated sale and bidding procedure motions. *See Debtor's First Day Emergency Motion For Entry Of An Order*

---

[4] The Debtor respectfully requests that the Court waive the Guidelines' page limit of three pages for the Introductory Statement.

1   *(I) Approving The Debtor's Entry into And Performance under an Asset Purchase Agreement,*

2   *(II) Establishing Bidding Procedures, (III) Scheduling Bid Deadline and Auction, (IV) Approving*

3   *Contract Assumption and Assignment Procedures, (V) Approving the Form and Manner of Notice,*

4   *(VI) Scheduling a Hearing to Consider Any Proposed Sale, and (VII) Granting Related Relief*;

5   *Debtor's Motion for Entry of an Order (I) Approving the Sale of Substantially All Debtor's Assets*

6   *Free and Clear of Liens; (II) Approving the Assumption and Assignment of Executory Contracts,*

7   *And (III) Granting Related Relief*, each filed contemporaneously herewith. In order to manage the

8   Debtor's affairs effectively and to conduct the auction sale process in a manner that will maximize

9   the Debtor's overall enterprise value, the Debtor must continue operating while the postpetition

10   process of marketing the assets, obtaining court approval for a sale, and closing the sale take place.

11   The Debtor's ability to operate during this period requires financing in the form of the DIP Loan

12   and immediate access to and use of its Cash Collateral, the absence of which would immediately

13   and irreparably harm the Debtor, its estate, and its creditors. Without such funds, the Debtor would

14   likely be forced to liquidate its assets for far less than the Debtor expects to receive through a sale

15   of such assets under the process the Debtor intends to run, to the detriment of all creditors.

16       After consulting with Greenhill and other advisors, and after considering and analyzing all

17   of its alternatives, the Debtor has concluded, in an exercise of its business judgment, that proceeding

18   with the Chapter 11 Case, using its Cash Collateral to fund certain expenses contained in the

19   Budget, and obtaining the DIP Loans from DIP Lender to fund other expenses in the Budget, are

20   in the best interests of the Debtor's estate.

21       Given the Debtor's current financial condition and financing arrangements, the Debtor was

22   unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code. The

23   Debtor was also unable to obtain secured credit from other sources: (a) having priority over that

24   of administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the

25   Bankruptcy Code; (b) secured by a lien on property of the Debtor and its estate that is not otherwise

26   subject to a lien; or (c) secured solely by a junior lien on property of the Debtor and its estate that

27   is already subject to a lien. As a result, financing on a postpetition basis was not otherwise available

28

DIP FINANCING AND CASH COLLATERAL MOTION

1   without granting the DIP Lender the protections, rights, and remedies afforded by the DIP Credit

2   Agreement and the DIP Orders.

3          The terms of the DIP Loans involve a priming lien in favor of the DIP Lender on

4   substantially all of the Debtor's assets.  As discussed herein, all of the Debtor's property is subject

5   to prepetition liens of the following Prepetition Secured Parties[5]:  (i) the SBA, which holds a lien

6   on account of the SBA EIDL Loan with approximately $500,000 in principal amount outstanding;

7   and (ii) the Noteholders, which hold a subordinated lien on account of the Secured Notes, with

8   aggregate indebtedness outstanding of approximately $8,200,000.  The Debtor has attempted to

9   contact the SBA by telephone and electronic mail to inquire whether the SBA consents to the

10  proposed priming lien and use of Cash Collateral, but the SBA has neither responded nor otherwise

11  taken a position regarding the DIP Loans, proposed use of Cash Collateral, and proposed Interim

12  DIP Order.  The Debtor understands that the Noteholders are generally amenable to the Debtor's

13  use of Cash Collateral consistent with the Budget, and the Debtor and Noteholders are engaged in

14  discussions regarding the Noteholders' consent to the Debtor's use of Cash Collateral.  It is the

15  Debtor's understanding, however, that the Noteholders do not consent to the DIP financing relief

16  requested herein.

17         The Debtor submits that (a) the terms and conditions of the DIP Loans are fair and

18  reasonable, reflect the Debtor's exercise of its business judgment consistent with its fiduciary

19  duties, and are supported by reasonably equivalent value and fair consideration, (b) the DIP Loans

20  have been negotiated in good faith and at arm's length among the Debtor and DIP Lender, and

21  (c) any credit extended, loans made, and other financial accommodations extended to the Debtor

22  by the DIP Lender has been extended, issued, or made, as the case may be, in "good faith" within

23  the meaning of section 364(e) of the Bankruptcy Code.

24         The relevant provisions of the DIP Credit Agreement and the Interim DIP Order are

25  described in detail, including references to the Interim DIP Order and DIP Credit Agreement, in

---

[5]   COMET Technologies USA Inc. ("Comet") holds a "precautionary" lien on certain equipment that the Debtor
      leases from Comet.  Comet's UCC-1 filing provides that the lien is precautionary and was submitted in the event
      that the parties' lease would be found to be a transaction creating a security interest.  As of the Petition Date, the
      Debtor is not aware of any alleged amount outstanding it owes to Comet, and the Debtor does not believe that the
      equipment lease between the Debtor and Comet does not create any security interest in the equipment.  Comet is
      receiving notice of this and the other First Day Motions.

the Grubb Declaration. A summary of the material provisions of the DIP Credit Agreement is as follows:[6]

| Material Terms | Summary |
|---|---|
| **The DIP Loans** | The DIP Loans provide for a senior-secured superpriority delayed draw term loan in an aggregate principal amount of $2.0 million. |
| **Borrowing Limits** | The Interim DIP Order contemplates no more than $1.0 million being made available under the DIP Loans upon entry of the Interim DIP Order (and the satisfaction of all other closing conditions) and the remaining balance of $1.0 million being made available upon entry of the Final Order (and the satisfaction of all other closing conditions). |
| **Use of DIP Proceeds** | The DIP Loan proceeds shall be used to effectively manage the auction sale process, the administration of the Chapter 11 Case, and maintain Debtor's operations. |
| **Interest Rate** | The DIP Loans shall accrue paid-in-kind interest from the Effective Date at the U.S. prime rate (subject to a 4.00% floor) plus 11.00% *per annum*.<br><br>Interest accrues and is compounded and capitalized monthly and is due and payable in cash upon the Maturity Date.<br><br>**Default Interest.** The DIP Loans shall accrue an additional 4.75% *per annum* while an event of default has occurred and is continuing, compounded and capitalized monthly. |
| **Maturity Date** | The earlier of (i) four months after the Effective Date of the First DIP Draw, (ii) repayment in full of all outstanding DIP Loans, and (iii) the acceleration of the DIP Loans following an Event of Default. |
| **Conditions to Closing** | Material closing conditions include:<br><br>• The Bankruptcy Court's entry of applicable Interim or Final DIP Order;<br><br>• The Debtor's delivery of an executed Borrowing Request in the amount of the requested DIP Draw; and<br><br>• Each of the representations and warranties set forth in the DIP Credit Agreement and in each other DIP Loan Document shall be true and correct as of the Effective Date. |
| **Events of Default** | Material events of default include:<br><br>• Failure to timely pay any DIP Lender Expense or other DIP Obligation;<br><br>• Granting or permitting to exist any Lien on any DIP Collateral, other than the DIP Liens and Existing Liens;<br><br>• Failure to comply with the Budget (subject to Permitted Variances); |

---

[6]  Any summary of the terms of the DIP Credit Agreement and the Interim DIP Order contained in this Motion is qualified in its entirety by reference to the provisions of the actual DIP Credit Agreement and Interim DIP Order, as applicable. To the extent the Motion and the Interim DIP Order or the DIP Credit Agreement are inconsistent, the Interim DIP Order or DIP Credit Agreement, as applicable, shall control.

| Material Terms | Summary |
|---|---|
| | • If any representation, warranty, certification, or other statement made, or deemed made in or delivered pursuant to any DIP Loan Document, by the Debtor, shall be false in any material respect as of the date so made, deemed made, or delivered; |
| | • If the Bankruptcy Court or another court of competent jurisdiction shall enter an order, without the prior written consent of the DIP Lender: granting adequate protection to any party, except as set forth in the Budget; (ii) Granting relief from the automatic stay to any party, other than the DIP Lender, with respect to any DIP Collateral; (iii) Surcharging, under Bankruptcy Code section 506(c) or otherwise, any DIP Collateral in any amount, or subjecting the DIP Lender or DIP Collateral to the equitable principle of marshaling; (iv) Approving credit or debt (other than the DIP Loans) secured by a Lien on any DIP Collateral; (v) Approving any administrative-expense claim, expense, or cost against the Debtor (other than the DIP Claims) with priority of payment senior or equal to the DIP Claims, (subject to the Carveout (as defined in the DIP Orders)); (vi) Modifying, staying, vacating, or rescinding any part of any DIP Order; (vii) Holding, adjudicating, or declaring any DIP Lien or DIP Claim (or the priority, validity, or enforceability thereof), any DIP Obligation, any DIP Loan Document, or any right or remedy of the DIP Lender to be invalid, unenforceable, or otherwise subject to question, challenge, or impairment; (viii) Enjoining, restraining, or in any other way preventing a Debtor from conducting any material part its business affairs; (ix) Appointing an examiner or trustee in the Debtor's Case; (x) Confirming any chapter 11 plan that does not provide for repayment in full in cash on the effective date of such plan of all outstanding DIP Obligations; (xi) Converting the Debtor's Case to a case under Bankruptcy Code chapter 7; or (xii) Dismissing the Debtor's Case; |
| | • If the Debtor, or an Affiliate commences any action in the Bankruptcy Court or another court of competent jurisdiction (a) seeking entry of any order described above or (b) questioning or challenging, or that could be reasonably expected otherwise to impair, any DIP Lien or DIP Claim (or the priority, validity, or enforceability thereof), any DIP Obligation, any DIP Loan Document, or any right or remedy of the DIP Lender; |
| | • If any party (other than the Debtor or an Affiliate thereof) shall commence any action in, file any motion or application with, or make any other submission to the Bankruptcy Court or another court of competent jurisdiction (a) seeking entry of any order described above or (b) questioning or challenging, or that could be reasonably expected otherwise to impair, any DIP Lien or DIP Claim (or the priority, validity, or enforceability thereof), any DIP Obligation, any DIP Loan Document, or any right or remedy of the DIP Lender; provided that the Debtor has not timely filed a |

Case: 21-51050   Doc# 22   Filed: 08/05/21   Entered: 08/05/21 21:07:31   Page 13 of 41

DIP FINANCING AND CASH COLLATERAL MOTION

| Material Terms | Summary |
|---|---|
| | reasonable objection or opposition to such action, motion, or other submission; and |
| | • If the Debtor shall fail to perform or comply with any other agreement, covenant, term, or condition in any DIP Loan Document, other than those listed above; provided such failure has not been remedied (if capable of remedy) within 21 days of the earlier of (a) the Debtor's becoming aware of such failure or (b) the Debtor's receipt of written notice from the DIP Lender of such failure. |
| Collateral and Priority | **Collateral –** substantially all owned or hereafter acquired assets and property of the Debtor (the "DIP Collateral").<br><br>**Priority** – the DIP Lender shall be granted the following on the DIP Collateral:<br><br>a) **First Priority Liens** – perfected first priority security interests in and liens on the DIP Collateral, subject to the Carve-Out.<br><br>b) **Superpriority Expense Claim** – superpriority administrative expense claims in the Chapter 11 Case of the Debtor, subject to the Carve-Out. |

The material provisions of the Motion concerning the use of Cash Collateral are as follows:

| Term | Description |
|---|---|
| Purposes for the Use of Cash Collateral | The Cash Collateral will be used only to manage the administration of the Chapter 11 Case and auction sale process, and support the continuity of the Debtor's operations. |
| Duration of the Use of Cash Collateral | The Debtor requests access to and use of the Cash Collateral until the earliest of: (i) 21 days following entry of a final sale order by this Court; (ii) the substantial consummation of a plan of reorganization filed in the Chapter 11 Case that is confirmed pursuant to an order entered by the Court; and (iii) the date the Court orders the conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code or the dismissal of the Chapter 11 Case or the appointment of a trustee or examiner with expanded power in the Chapter 11 Case (collectively, the "Termination Date"). |
| Adequate Protection | None. The Prepetition Secured Parties are adequately protected absent further relief because of the substantial equity cushion in the Collateral based on the proposed Stalking Horse bid by Bruker Nano, Inc. |
| Entities with an Interest in the Cash Collateral | United States Small Business Administration; the Noteholders. |

1

## III.   CERTIFICATION

2       The undersigned counsel for the Debtor has read the Motion and Introductory Statement; to

3    the best of my knowledge, information, and belief, formed after reasonable inquiry, the terms of

4    the relief sought in the Motion are in conformity with the Court's *Guidelines for Cash Collateral*

5    *and Financing Motions and Stipulations*, except as set forth above.  I understand and have advised

6    the Debtor that the Court may grant appropriate relief under Bankruptcy Rule 9024 if the court

7    determines that a material element of the Motion was not adequately disclosed in the Introductory

8    Statement.

9

10   Dated:  August 5, 2021

11
                                    PAUL HASTINGS LLP
12

13
                           By       */s/ Todd Schwartz*
14                                       Todd Schwartz

15                                  *Proposed Attorneys for Debtor and*
                                    *Debtor in Possession*
16

17

18

19

20

21

22

23

24

25

26

27

28

DIP FINANCING AND CASH COLLATERAL MOTION

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     BACKGROUND

On August 4, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manage its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

No official committee of unsecured creditors has yet to be appointed in the case.

The purpose of the bankruptcy filing is to facilitate a going-concern sale process that will yield the highest and best return on the Debtor's assets for the benefit of its estate.  The proceeds of the DIP Loans and the use of Cash Collateral sought in this Motion provide the necessary runway for the Debtor to operate as a going concern and conduct the auction sale process in a manner that will maximize the Debtor's enterprise value.

## II.     THE DEBTOR'S CAPITAL STRUCTURE

As described in the First Day Declaration, the Debtor's capital structure consists of a secured loan with the SBA and subordinated secured notes held by the Noteholders.  The SBA and the Noteholders are collectively referred to herein as the Prepetition Secured Parties.

The SBA EIDL Loan is documented in that certain Loan Authorization and Agreement, dated March 30, 2020, and Note, dated April 1, 2020, both by and between the SBA and the Debtor. As of the Petition Date, there is approximately $517,000 in principal amount outstanding under the SBA EIDL Loan.  The SBA EIDL Loan is secured by a first-position lien on substantially all of the Debtor's assets.

The Secured Notes are documented in the Notes Agreements, which provide for the subordination of the aggregate outstanding amount of the Secured Notes to the SBA EIDL Loan. As of the Petition Date, there is approximately $8.2 million in aggregate indebtedness outstanding under the Secured Notes.  The Debtor's obligations under the Secured Notes are also secured by a lien on substantially all assets of the Debtor.

COMET Technologies USA Inc. ("Comet") holds a "precautionary" lien on certain equipment that the Debtor leases from Comet.  Comet's UCC Financing Statement provides that

the lien is precautionary and was submitted in the event that the parties' lease would be found to be a transaction creating a security interest. As of the Petition Date, the Debtor is not aware of any alleged amount outstanding it owes to Comet, and the equipment lease between the Debtor and Comet does not create any security interest in the equipment. Comet is receiving notice of this and the other First Day Motions.

Legalist does not have any prepetition loans to the Debtor. The Debtor, with the assistance of Greenhill, marketed the DIP Loans to multiple interested parties in the lead-up to the Debtor filing for bankruptcy, and two prospective lenders executed non-disclosure agreements with the Debtor. Only Legalist provided a formal, non-binding, DIP financing proposal to the Debtor. *See* Grubb Decl., ¶ 17. After consulting with Greenhill and counsel, considering and analyzing the Legalist proposal, and negotiating with Legalist to provide the most beneficial terms available, the Debtor has concluded, in an exercise of its business judgment, that the proposed DIP Lender provides the most favorable terms to the Debtor's estate under the circumstances.

## III.     PROPOSED DIP FINANCING

### A.     The DIP Loans and Use of Cash Collateral Are Critical to Allow the Debtor's Proposed Sale Process to Occur

The Debtor requires immediate usage of Cash Collateral and access to the DIP Loans to ensure that the administration of the Chapter 11 Case—in particular the expedited auction and sale of substantially all of the Debtor's assets—yields the highest and best return for the benefit of the estate and the Debtor's constituents. Absent immediate funding through the DIP Loans and use of Cash Collateral, the Debtor would be unlikely to execute a sale of its business as a going concern, and would likely be forced to convert this case to chapter 7, which would have a significant adverse effect on the Debtor's estate, its employees, vendors, and other parties in interest. Access to the Cash Collateral and proceeds of the DIP Loans provide the Debtor with the relatively short runway needed to successfully complete the sale process and provide meaningful, if not total, recoveries to creditors.

**B.      The Debtor's Selection of Legalist as DIP Lender**

Leading up to the Petition Date, the Debtor, with the assistance of Greenhill, engaged in a thorough and competitive marketing process to obtain DIP financing.

In consultation with Greenhill, the Debtor sized the $2.0 million DIP Loans by evaluating SVXR's projected cash needs for the anticipated duration of the chapter 11 proceedings. *See* Grubb Decl., ¶¶ 11–12.  As set forth in the Budget, the Debtor projects negative operating cash-flow during the majority of the Chapter 11 Case.  Moreover, the DIP Loans sizing also incorporates projected administrative expenses, such as professional fees for estate-paid professionals, to be paid during the pendency of the Chapter 11 Case.

The Debtor's primary strategic considerations when marketing the DIP financing were the identification of an economical and reliable source of financing that would (i) support SVXR's need for a loan amount of only $1–3 million, (ii) with a likely maturity date of 120 days or less, and (iii) permit SVXR to secure committed financing at the most favorable terms to limit the debt service cost during the Chapter 11 Case.  *Id.*, ¶ 10.

SVXR's marketing process involved inquiries from multiple lenders and was conducted at arm's length and in good faith.  With the assistance of Greenhill, SVXR contacted seven (7) prospective lenders that might have an interest in a financing of the amount and maturity of the DIP Loan, including the Noteholders.  Two lenders (together, the "Potential Lenders") executed a non-disclosure agreement ("NDA") with the Debtor.  *Id*., ¶ 14.

Between June 30, 2021 and July 21, 2021, the Debtor, with the assistance of Greenhill and other advisors, communicated with the Potential Lenders and presented them with information to enable them to fully evaluate the DIP financing request.  *Id.*, ¶ 15.  Greenhill also provided the Potential Lenders with access to the Debtor's virtual data room for lender diligence, and the Debtor and Greenhill engaged in due diligence conversations with the Potential Lenders.

On July 2, 2021, Legalist submitted an initial, non-binding term sheet (the "Legalist Term Sheet") after reviewing and analyzing certain due diligence materials provided by the Debtor.  *Id.*, ¶ 17.  On July 3, 2021, another potential DIP lender executed an NDA and was granted access to the Debtor's virtual data room to conduct lender diligence.  *Id*.

Ultimately, the Legalist term sheet was the only competitive DIP financing offer that the Debtor received.

The Debtor, with the assistance of Greenhill and other advisors, evaluated the Legalist Term Sheet and considered its conditions, fees, interest rate, and flexibility regarding the timing of draws on the DIP Loans. *Id.*, ¶ 19. Following this review and based on their analyses, the Debtor and Greenhill determined that the Legalist Term Sheet met the Debtor's particular needs and was the best available financing proposal. The Legalist Term Sheet included the most favorable economic terms the Debtor received, and it also offered SVXR flexibility regarding the timing of draws on the DIP Loans based on SVXR's short-term liquidity needs.

The Debtor, with the assistance of Greenhill, continued to field inquiries leading up to the Petition Date and explored whether any additional lenders might be willing to provide financing on more competitive terms than those being negotiated with Legalist. No alternative lenders, however, offered to provide a term loan on competitive terms and with a similar structure to the Legalist Term Sheet.

On August 4, 2021 the Debtor and Legalist entered into the DIP Credit Agreement.

**C.     The DIP Loans**

The Debtor proposes to enter into the DIP Loans to fund its operations and the administration of the Chapter 11 Case. The DIP Loans preserve the Debtor's operations and provide the Debtor with sufficient liquidity to fund the administration of the Chapter 11 Case and to pursue and consummate a successful auction sale process. As discussed below and in the Grubb Declaration, the DIP Loans are the best postpetition financing option available to the Debtor and should be approved.

As a result of the marketing process described above, the Debtor has obtained DIP financing on favorable terms. Given the Debtor's current financial condition and financing arrangements, and the short-term nature of the DIP Loans, the Debtor was unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code. The Debtor was also unable to obtain secured credit from other sources: (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code; (b) secured by a lien

on property of the Debtor and its estate that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtor and its estate that is already subject to a lien. As a result, financing on a post-petition basis was not otherwise available without granting Legalist the protections, rights, and remedies afforded by the DIP Credit Agreement. The DIP Loans also provide flexibility to SVXR to use only the DIP Loan proceeds necessary to effectively manage the auction sale process, the administration of the Chapter 11 Case, and maintain Debtor's operations. In sum, given the DIP Loans' competitive economic terms and flexible structure, the DIP Loans are the best financing available to SVXR. Grubb Decl., ¶¶ 24–25.

In the sound exercise of its business judgment and fiduciary duty, the Debtor has determined to proceed under the DIP Loans offered by Legalist, subject to the approval of the Court.

## IV. REQUIRED DISCLOSURES FOR CASH COLLATERAL AND FINANCING MOTIONS

Pursuant to the Court's Guidelines, and Bankruptcy Rules 4001(c) and (d), the Debtor makes the following required disclosures and summarizes the material terms of the Interim DIP Order and the DIP Loans:

| Material Terms | Summary | Reason | Citation |
|---|---|---|---|
| **Borrower**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B) | SVXR, Inc. (the "Debtor"). | N/A | *See* DIP Credit Agreement; Interim DIP Order (preamble) |
| **DIP Lender**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B) | Legalist, Inc. ("Legalist" or the "DIP Lender"). | N/A | *See* DIP Credit Agreement; Interim DIP Order (preamble) |
| **The DIP Loans**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B) | The DIP Loans provide for a first lien superpriority delayed draw term loan in an aggregate principal amount of $2.0 million. | N/A | *See* DIP Credit Agreement (recitals; §§ 1.01, 10.01-03); Interim DIP Order (preamble) |
| **Borrowing Limits**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B) | The Interim DIP Order contemplates no more than $1.0 million being made available under the DIP Loans upon entry of the Interim DIP Order (and the satisfaction of all other closing conditions) and the remaining balance of $1.0 million being made available upon entry of the Final Order (and the satisfaction of all other closing conditions). | N/A | *See* DIP Credit Agreement (recitals; § 3.01); Interim DIP Order (preamble; ¶ 3). |

| Material Terms | Summary | Reason | Citation |
|---|---|---|---|
| **13-Week Forecast**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B) | SVXR will provide the DIP Lender an updated Budget, including a 13-week cash flow forecast, on a monthly basis after the Effective Date of the DIP Loans. | N/A | *See* DIP Credit Agreement (§ 5.01); Interim DIP Order (¶ 8). |
| **Use of DIP Proceeds**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B) | The DIP Loan proceeds shall be used to effectively manage the auction sale process, the administration of the Chapter 11 Case, and maintain Debtor's operations. | N/A | *See* DIP Credit Agreement (§ 2.02); Interim DIP Order (preamble; ¶ 8). |
| **Interest Rate**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B) | The DIPs Loan shall accrue paid-in-kind interest from the Effective Date at the U.S. prime rate (subject to a 4.00% floor) plus 11.00% *per annum*.<br><br>Interest accrues and is compounded and capitalized monthly and is due and payable in cash upon the Maturity Date.<br><br>**Default Interest.** The DIP Loans shall accrue an additional 4.75% *per annum* while an event of default has occurred and is continuing, compounded and capitalized monthly | N/A | *See* DIP Credit Agreement (§ 2.04); Interim DIP Order (¶ 5). |
| **Expenses and Fees** | 1. **Undrawn Line Fee**: 3.00% *per annum* for undrawn availability under the DIP Loans, compounded and capitalized monthly.<br><br>2. **Commitment Fee**: one-time, 2.00% of the DIP Loans earned upon the Effective Date.<br><br>3. **Underwriting Fee**: one-time, 1.50% of the DIP Loans earned upon the Effective Date.<br><br>4. **Monitoring Fee**: 1.50% *per annum* of the DIP Loans, compounded and capitalized monthly.<br><br>5. **Makewhole Fee**: one-time, 3.75% of any amount of the DIP Loans required to be repaid within two months of the Effective Date. | N/A | *See* DIP Credit Agreement (§§ 2.04, 2.05 and 2.07); Interim DIP Order (¶ 5). |
| **Maturity Date**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B) | The earlier of (i) four months after the Effective Date of the First DIP Draw, (ii) repayment in full of all outstanding DIP Loans, and (iii) the acceleration of the DIP Loans following an Event of Default. | N/A | *See* DIP Credit Agreement (§§ 1.01 and 2.04(d)); Interim DIP Order (¶ 10). |

DIP FINANCING AND CASH COLLATERAL MOTION

| Material Terms | Summary | Reason | Citation |
|---|---|---|---|
| **Mandatory Prepayments** | Mandatory prepayment from, and within 10 days of, the Debtor's receipt of proceeds from a sale of substantially all of the Debtor's assets, including the DIP Collateral, subject to a Makewhole Fee if such repayment is required to be made prior to 60 days after the Effective Date. | N/A | *See* DIP Credit Agreement (§ 2.07(b)). |
| **Conditions to Closing** Fed. R. Bankr. P. 4001(c)(1)(B) | Material closing conditions include:<br><br>• The Bankruptcy Court's entry of applicable Interim or Final DIP Order, which remains in full force and effect as so entered and in Approved Form; provided that, upon entry of the Interim DIP Order but prior to entry of the Final DIP Order, the Debtor shall be permitted to draw no more than $1,000,000 of the DIP Commitment;<br><br>• The Debtor's delivery of an executed Borrowing Request in the amount of such DIP Draw; and<br><br>• Each of the representations and warranties set forth in the DIP Credit Agreement and in each other DIP Loan Document shall be true and correct as of the Effective Date, except to the extent that any such representation or warranty expressly relates to an earlier date, in which case each such representation and warranty shall have been true and correct as of such earlier date. | N/A. | *See* DIP Credit Agreement (§§ 3.01 and 3.02). |
| **Events of Default** Fed. R. Bankr. P. 4001(c)(1)(B) | Material events of default include:<br><br>• If Debtor shall: (i) Fail to timely pay any DIP Lender Expense or other DIP Obligation; (ii) Grant or permit to exist any Lien on any DIP Collateral, other than the DIP Liens and Existing Liens; or (iii) Make any payment not expressly contemplated by, or otherwise fail to comply with, the Budget (subject to Permitted Variances);<br><br>• Any representation, warranty, certification, or other statement made, or deemed made in or delivered pursuant to any DIP Loan Document, by the Debtor shall be false in any material respect as of | N/A. | *See* DIP Credit Agreement (§ 8.01); Interim DIP Order (¶ 11). |

| Material Terms | Summary | Reason | Citation |
|---|---|---|---|
| | the date so made, deemed made, or delivered; | | |
| | • The Bankruptcy Court or another court of competent jurisdiction shall enter an order, without the prior written consent of the DIP Lender: (i) Granting adequate protection, under Bankruptcy Code section 361, 362, 363, or 364 or otherwise, to any party, except as set forth in the Budget; (ii) Granting relief from the automatic stay, under Bankruptcy Code section 362 or otherwise, to any party, other than the DIP Lender, with respect to any DIP Collateral; (iii) Surcharging, under Bankruptcy Code section 506(c) or otherwise, any DIP Collateral in any amount, or subjecting the DIP Lender or DIP Collateral to the equitable principle of marshaling; (iv) Approving credit or debt (other than the DIP Loans) secured by a Lien, under Bankruptcy Code section 364 or otherwise, on any DIP Collateral; (v) Approving any administrative-expense claim, expense, or cost against the Debtor (other than the DIP Claims), under Bankruptcy Code section 364, 502, 507, or otherwise, with priority of payment senior or equal to the DIP Claims, (subject to the Carveout (as defined in the DIP Orders)); (vi) Modifying, staying, vacating, or rescinding any part of any DIP Order; (vii) Holding, adjudicating, or declaring any DIP Lien or DIP Claim (or the priority, validity, or enforceability thereof), any DIP Obligation, any DIP Loan Document, or any right or remedy of the DIP Lender to be invalid, unenforceable, or otherwise subject to question, challenge, or impairment; (viii) Enjoining, restraining, or in any other way preventing a Debtor from conducting any material part its business affairs; (ix) Appointing an examiner or trustee in the Debtor's Case; (x) Confirming any chapter 11 plan that does not provide for repayment in full in cash on the effective date of such plan of all outstanding DIP Obligations; (xi) | | |

DIP FINANCING AND CASH COLLATERAL MOTION

| Material Terms | Summary | Reason | Citation |
|---|---|---|---|
| | Converting the Debtor's Case to a case under Bankruptcy Code chapter 7; or (xii) Dismissing the Debtor's Case; | | |
| | • The Debtor, or an Affiliate commences any action in the Bankruptcy Court or another court of competent jurisdiction (a) seeking entry of any order described above or (b) questioning or challenging, or that could be reasonably expected otherwise to impair, any DIP Lien or DIP Claim (or the priority, validity, or enforceability thereof), any DIP Obligation, any DIP Loan Document, or any right or remedy of the DIP Lender; | | |
| | • Any party (other than the Debtor or an Affiliate thereof) shall commence any action in, file any motion or application with, or make any other submission to the Bankruptcy Court or another court of competent jurisdiction (a) seeking entry of any order described above or (b) questioning or challenging, or that could be reasonably expected otherwise to impair, any DIP Lien or DIP Claim (or the priority, validity, or enforceability thereof), any DIP Obligation, any DIP Loan Document, or any right or remedy of the DIP Lender; provided that the Debtor has not timely filed a reasonable objection or opposition to such action, motion, or other submission; and | | |
| | • If the Debtor shall fail to perform or comply with any other agreement, covenant, term, or condition in any DIP Loan Document, other than those listed above; provided such failure has not been remedied (if capable of remedy) within 21 days of the earlier of (a) the Debtor's becoming aware of such failure or (b) the Debtor's receipt of written notice from the DIP Lender of such failure | | |
| Collateral and Priority | **Collateral** – substantially all owned or hereafter acquired assets and | Priming of the Prepetition Secured Parties' liens and | *See* DIP Credit Agreement (§§ 1.01, 4.03, 10.01, 10.02, |

DIP FINANCING AND CASH COLLATERAL MOTION

| Material Terms | Summary | Reason | Citation |
|---|---|---|---|
| Fed. R. Bankr. P. 4001(c)(1)(B)(i) | property of the Debtor (the "<u>DIP Collateral</u>")<br><br>**Priority** – the DIP Lender shall be granted the following on the DIP Collateral:<br><br>   c)   **<u>First Priority Liens</u>** – perfected first priority security interests and liens on the DIP Collateral, subject to the Carve-Out<br><br>   d)   **<u>Superpriority Expense Claim</u>** – superpriority administrative expense claims in the Chapter 11 Case of the Debtor, subject to the Carve-Out | granting of superpriority administrative expense claims, subject to the Carve-Out, is necessary to obtain the DIP financing and consummate an auction sale process that may pay all creditor claims in full. | 10.03); Interim DIP Order (preamble; ¶¶ 5, 6, 7 and 17). |
| **The Providing of Adequate Protection or Priority With Respect to a Claim That Arose Before The Commencement of The Case, Including The Granting of a Lien On Property of The Estate To Secure The Claim, or The Use of Property of The Estate or Credit Obtained Under Bankruptcy Code § 364 to Make Cash Payments On Account of The Claim**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B)(ii) | None. The Prepetition Secured Parties are adequately protected absent further relief because of the substantial equity cushion in the Debtor's Collateral based on the proposed Stalking Horse Bid of Bruker Nano, Inc. | N.A. | *See* Interim DIP Order (Proposed Findings of Fact and Conclusions of Law, ¶ L). |
| **A Determination With Respect To The Validity, Perfection, Priority, Or Amount of A Claim That Arose Before The Commencement of The Case, Or of Any Lien Securing Such Claim**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B)(iii) | None. | N.A. | N.A. |

DIP FINANCING AND CASH COLLATERAL MOTION

| Material Terms | Summary | Reason | Citation |
|---|---|---|---|
| **Waiver or Modification of the Automatic Stay**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B)(iv) | The automatic stay shall be modified as necessary to permit the granting of DIP Liens and to incur all DIP Obligations under the DIP Credit Agreement and to authorize the DIP Lender to retain and apply payments as set forth in the Interim DIP Order or Final DIP Order, as applicable. | Expedited nature of auction sale process and DIP Lender's funding of administration of Chapter 11 Case. | *See* Interim DIP Order (preamble; ¶¶ 12, 13 and 14). |
| **A Waiver Or Modification of Any Entity's Authority To File a Plan, To Seek an Extension of Time In Which The Debtor Has The Exclusive Right To File a Plan, Or The Right To Request The Use of Cash Collateral Under Bankruptcy Code § 363(C), Or To Request Authority To Obtain Credit Under Bankruptcy Code § 364**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B)(v) | Under the DIP Credit Agreement, if the Court enters an order without the prior written consent of the DIP Lender approving credit or debt (other than the DIP Loans) secured by a Lien, under section 364 of the Bankruptcy Code or otherwise, on any DIP Collateral, an Event of Default will have occurred. | DIP Lender's agreement to lend. | *See* DIP Credit Agreement (§ 8.01(iii)(D)). |
| **Milestones**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B)(vi) | No milestones related to assets sales or a plan of reorganization. | N/A. | N/A. |
| **Waiver or Modification of Applicability of Nonbankruptcy Law Relating to the Perfection, Foreclosure or other Enforcement of a Lien**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B)(vii) | The Interim DIP Order is sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Liens or to entitle the DIP Liens to the priorities granted in the Interim DIP Order or the Final Order, as applicable. | DIP Lender's agreement to lend. | *See* DIP Credit Agreement (§ 10.02); Interim DIP Order (¶ 7). |
| **A Release, Waiver, Or Limitation On Any Claim Or Other Cause of Action Belonging To The Estate Or The Trustee, Including** | No portion of the DIP Loans may be used for the payment of fees, costs, or expenses incurred by any party in investigating or pursuing any claims or causes of action against the DIP Lender, or challenging the DIP Claims or DIP Liens. | DIP Lender's agreement to lend. | *See* DIP Credit Agreement (§ 2.02); Interim DIP Order (¶ 8). |

DIP FINANCING AND CASH COLLATERAL MOTION

| Material Terms | Summary | Reason | Citation |
|---|---|---|---|
| **Any Modification of The Statute of Limitations Or Other Deadline To Commence An Action**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B)(viii) | | | |
| **Indemnification of Any Entity**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B)(ix) | Indemnification of the DIP Lender, its affiliates, and its directors, officers, employees, and agents for liability arising in connection with the DIP Credit Agreement, except to the extent any such claim is based on gross negligence or willful misconduct of an Indemnified Person. | DIP Lender's agreement to lend. | *See* DIP Credit Agreement (§ 7.01). |
| **Section 506(c) Waiver**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B)(x) | Upon entry of the Interim DIP Order, no costs or expenses which have been or may be incurred in the Chapter 11 Case at any time shall be charged against the DIP Lender, the DIP Obligations or the DIP Collateral. | DIP Lender's agreement to lend. | *See* Interim DIP Order (¶ 16). |
| **Liens on Avoidance Actions**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B)(xi) | DIP Collateral includes causes of action arising under Chapter 5 of the Bankruptcy Code and all proceeds thereof. | DIP Lender's agreement to lend. | *See* DIP Credit Agreement (§§ 1.01 and 10.02). |
| **Carve-Out**<br><br>Fed. R. Bankr. P. 4001(c)(1)(B)(i) | The DIP Liens and Superpriority Claims shall be subject and subordinate to a carve-out, which shall comprise the following: (i) all fees required to be paid to the clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United State Code (plus interest at the statutory rate) for the period up to the occurrence of a Carve-Out Trigger (as defined below), (ii) the documented and unpaid fees, costs and expenses that were accrued or incurred prior to the Carve-Out Trigger by each person or firm retained by the Debtor and the Committee, if any, as an estate professional (collectively, the "Professionals") for the benefit of such Professional and payable under sections 330 and 331 of the Bankruptcy Code, to the extent allowed by an order of this Court (whether allowed prior to or after the occurrence of the Carve-Out Trigger), subject to the terms of the Interim DIP Order and any other orders entered by the Court; (iii) reasonable fees and | Cost of paying for the administration of the Chapter 11 Case in light of stalking horse bidder's desire for bankruptcy sale and sale proceeds possibly being sufficient to repay secured creditors in full. | *See* Interim DIP Order (¶ 17). |

DIP FINANCING AND CASH COLLATERAL MOTION

| Material Terms | Summary | Reason | Citation |
|---|---|---|---|
| | expenses incurred by a trustee under section 726(b) of the Bankruptcy Code not to exceed $20,000; and (iv) up to a maximum amount of $200,000 of unpaid documented fees, costs and expenses accrued or incurred by Professionals following the occurrence of the Carve-Out Trigger, payable under sections 330 and 331 of the Bankruptcy Code and subsequently allowed by order of this Court. | | |

Certain of the terms of the DIP Loans are terms that are identified in the Court's Guidelines as provisions that the Court will not ordinarily approve. For the reasons set forth herein, the Debtor submits that such terms are necessary and appropriate in the circumstances of this case because the DIP Lender insisted on these provisions in return for extending $2.0 million of credit on favorable pricing and other terms.

| Guidelines Provision | DIP Loan Description |
|---|---|
| Cross-collateralization clauses, *i.e.*, clauses that secure prepetition debt by postpetition assets in which the secured party would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law. *See* Bankruptcy Code § 552. | None. |
| "Roll-ups," i.e., such as provisions deeming prepetition debt to be post-petition debt or using post-petition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided in Bankruptcy Code § 552(b), which deals with security interests in proceeds and profits. | None. |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection, or amount of the prepetition secured party's lien or debt. | None. |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's lien and liens held by persons who are not party to the stipulation (This would include, for example, an order approving a stipulation providing that the secured party's lien is a "first priority" lien). | The priming provisions of paragraph 7 of the Interim DIP Order, which dictate the relative priorities of the DIP Lender's liens vis a vis the Prepetition Secured Parties' liens. |
| Waivers of, or grants of lien on, rights under Bankruptcy Code §506(c), unless the waiver or grant is effective only during the period in which the debtor is authorized to use cash collateral or borrow funds. (Otherwise a future trustee might be faced with a duty to care for and preserve collateral in the trustee's possession and no financial means for discharging that duty). | Paragraph 16 of the Interim DIP Order provides that DIP Lender is entitled to a full and complete waiver, with respect to all parties, of Bankruptcy Code section 506(c) and in no event shall the DIP Lender, the DIP Obligations, or the DIP Collateral be subject to any "surcharge" or the doctrine of |

Case: 21-51050   Doc# 22   Filed: 08/05/21   Entered: 08/05/21 21:07:31   Page 28 of

DIP FINANCING AND CASH COLLATERAL MOTION

| Guidelines Provision | DIP Loan Description |
|---|---|
| | "marshalling" by any party in any way whatsoever. |
| Provisions that operate, as a practical matter, to divest the debtor in possession of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable law. | None. |
| Releases of, or limitations on, liability for the creditor's alleged prepetition torts or breaches of contract. | None. |
| Waivers of, or liens on any of the estate's rights arising under Bankruptcy Code §§ 544, 545, 547, 548, 549, 553, 723(a), or 724(a), or the proceeds of any such rights | Section 10.02 of the DIP Credit Agreement and paragraph 7 of the Interim DIP Order provide for the grant, following the entry of the Interim DIP Order, to the Lender of a lien on all proceeds of claims or causes of action arising under Chapter 5 of the Bankruptcy Code. |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | None. |
| Waivers and modifications of the procedural requirements for foreclosure mandated under applicable non-bankruptcy law. | None. |
| Waivers or limitations, effective on default or expiration, of the debtor in possession's or trustee's right to move for a court order pursuant to Bankruptcy Code § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent. | None. |
| Findings of fact on matters extraneous to the approval process. (For example, in connection with an application to borrow on a secured basis, a finding that the debtor cannot obtain unsecured credit would be acceptable if supported by competent evidence, whereas a "finding" that the lender acted in good faith in declaring the prepetition loan in default would not be acceptable). | None. |
| Provisions providing unreasonable treatment with respect to fees or professionals retained by a creditors' committee compared to any carve-outs provided for professionals retained by the debtor in possession or trustee. | None. |
| Provisions that provide an inadequate carve-out for a subsequently appointed trustee in the case, whether before or after conversion. | The Carve-Out in Paragraph 17 of the DIP Order includes a $20,000 carve-out for a chapter 7 trustee, which the Debtor believes is reasonable in light of the facts and expected timeline of this case. |

## V. BASIS FOR RELIEF REQUESTED

### A. The Court Should Approve the DIP Loans under Sections 364(c) and 364(d)(1)

The Debtor requests authorization under sections 364(c) and (d)(1) of the Bankruptcy Code to grant the DIP Lender two types of protections: (i) a superpriority administrative claim pursuant to section 364(c)(1) (*see* DIP Credit Agreement § 10.01); and (ii) a lien on substantially all of the

- 23 -

DIP FINANCING AND CASH COLLATERAL MOTION

Debtor's assets that will be senior to the Prepetition Secured Parties' liens on the Collateral (*see* DIP Credit Agreement § 10.02). SVXR has satisfied the requirements to obtain credit on these terms.

<h4 style="text-align:center">1.    SVXR has Carried its Burden under Section 364(c)</h4>

Under section 364(c) of the Bankruptcy Code, a debtor may grant superpriority administrative claims and incur secured debt if the court determines that the debtor was "unable to obtain unsecured credit allowable under section 503(b)(1) . . . as an administrative expense." Courts evaluating requests for financing under section 364(c) consider whether certain factors are met, including that: (1) the proposed financing is an exercise of the debtor's sound and reasonable business judgment; (2) the financing agreement was negotiated in good faith and at arm's length; (3) no alternative financing is available on any other basis; (4) the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the borrower and the proposed lender; (5) the financing is necessary, essential, and appropriate for the continued operation of the Debtor's business and the preservation of its estate; and (6) the financing is in the best interests of the estate and its creditors. *See In re Gardens Reg'l Hosp.*, No. 2:16-BK-17463-ER, 2017 WL 7101146, at \*4 (Bankr. C.D. Cal. July 28, 2017) (approving postpetition financing under § 364(c) based on these factors); *In re Sterling Mining Co.*, No. 09-20178-TLM, 2009 WL 2514167, at \*3 (Bankr. D. Idaho Aug. 14, 2009); *see also In re Farmland Indus., Inc.*, 294 B.R. 855, 879-81 (Bankr. W.D. Mo. 2003) (discussing factors applied by bankruptcy courts across jurisdictions). Each of these factors is satisfied here.

***The DIP Loans Reflect SVXR's Sound Business Judgment***. In evaluating a proposed DIP financing under section 364(c), courts generally defer to the business judgment of the debtor. *See In re Republic Airways Holdings Inc.*, No. 16-10429(SHL), 2016 WL 2616717, at \*10–11 (Bankr. S.D.N.Y. May 4, 2016); *In re Ames Dep't Stores*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990). Courts presume that debtors make financing decisions "on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company." *In re Los Angeles Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011); *see also In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985) ("The discretion to act with regard to business planning activities is at the

DIP FINANCING AND CASH COLLATERAL MOTION

heart of the debtor's power.") Courts will not "second-guess a business decision, so long as corporate management exercised a minimum level of care in arriving of the decision". *In re Los Angeles Dodgers LLC*, 457 B.R. at 313; *see also In re Simasko Prod. Co.*, 47 B.R. at 449 ("business judgments should be left to the board room and not to this Court").

Here, the Debtor has exercised the utmost level of care in selecting and entering into the DIP Loans. As explained in the First Day Declaration and the Grubb Declaration, SVXR has been seeking and evaluating strategic transactions and financings for nearly a year, in consultation with experienced legal and financial advisors. *See* First Day Decl., (10:20-12:27); Grubb Decl., ¶ 8. As described in detail above and in the Grubb Declaration, the Debtor performed a competitive marketing process, seeking DIP financing proposals from numerous lenders, including the Noteholders, and selecting the option offering the best terms following multiple rounds of negotiations. Accordingly, the Debtor submits that the decision to enter into the DIP Loans is the product of its sound business judgment.

***The DIP Loans Were Negotiated in Good Faith and at Arm's Length. The Terms Are Fair, Reasonable and Adequate, and SVXR Could Not Obtain Credit Available on More Favorable Terms.*** A debtor is not required to seek alternative financing from every possible lender before it may grant administrative expense claims or incur secured debt. *See In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986) (more favorable credit unavailable where debtor contacted lenders in the "immediate geographic area" and they would not extend unsecured credit); *see also In re Reading Tube Indus.*, 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987). Rather, the debtor need only demonstrate that it made a "reasonable effort" to obtain unsecured credit from other lenders. *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (citing cases); *In re Capitol Station 65*, *LLC*, No. 17-23627-B-11, 2018 WL 333863, at *12 (Bankr. E.D. Cal. Jan. 8, 2018).

SVXR engaged in a competitive and thorough marketing process to obtain the most favorable postpetition financing available. The Debtor's marketing process, and the negotiations of the terms of the DIP Loans, were carried out in good faith and at arm's length through sophisticated and experienced legal and financial advisors. *See* Grubb Decl., ¶ 29. Based on an evaluation of all reasonably available options, the DIP Loans represent the best financing available

to the Debtor. *Id.*, ¶ 32.  As noted in the Grubb Declaration, given SVXR's financial circumstances and credit profile, financing was not available except for secured indebtedness.  *See id.*, ¶¶ 13-17. Finally, as described more fully above, SVXR was unable to obtain financing without agreeing to provide the DIP Lender with certain terms enumerated in the Guidelines. The Debtor submits that approving such terms is appropriate under the circumstances because (a) the DIP Lender was unwilling to extend $2,000,00.00 in credit without such terms; and (b) the terms of the DIP Loans are otherwise favorable to the Debtor and its estate.  *See id.*, ¶¶ 29-32.  Notably, the DIP Loans do not subject SVXR to any milestones related to its proposed sale or plan process.  *See id.*, ¶ 25. Moreover, provisions similar to the enumerated terms at issue here are frequently approved in this district, *see, e.g.*, *In re Imperial Toy LLC,* Case No. 19-52335 (Bankr. N.D. Cal. Nov. 20, 2019) [Docket No. 29]; *In re Blue Earth, Inc.*, Case No. 16-30296 (Bankr. N.D. Cal. Apr. 29, 2016) [Docket No. 116]; *In re Newzoom, Inc.*, Case No. 15-31141 (Bankr. N.D. Cal. Oct. 15, 2015) [Docket No. 153]; *In re Rdio, Inc.*, Case No. 15-31430 (Bankr. N.D. Cal. Dec. 10, 2015) [Docket No. 122].

***The DIP Loans Are Necessary, Essential and Appropriate for the Continued Operation of SVXR's Business and the Preservation of its Estate and Are in the Best Interest of the Estate and Its Creditors.***  The DIP Loans are necessary for the continued operation of the Debtor's business and the preservation of its estate during the Chapter 11 Case.  As discussed above, the DIP Loans were sized based upon the Debtor's projected cash flow and liquidity needs for the anticipated duration of the (expedited) Chapter 11 Case.  *See* Grubb Decl., ¶ 11.  Without access to the DIP Loans, the Debtor may lack sufficient liquidity to maintain stability among its operations and employees, putting at risk the value maximizing transaction contemplated by the APA, bid procedures and sale motion.  Accordingly, the DIP Loans preserve value for the Debtor's estate and its stakeholders and are in the best interest of the estate and its creditors.

For the foregoing reasons, the Debtor submits that the DIP Loans were negotiated at arm's length and in good faith, that the terms are fair, reasonable and adequate, and that the DIP Loans represent the best financing available to SVXR under the circumstances.

2.    <u>Because All of the Debtor's Secured Creditors Are Adequately Protected, SVXR has Carried its Burden under Section 364(d)(1)</u>

Section 364(d)(1) of the Bankruptcy Code governs the incurrence of senior secured debt or "priming" loans. Pursuant to section 364(d)(1) of the Bankruptcy Code, the Court may, after notice and a hearing, authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien only if -

> (1)    the trustee is unable to obtain such credit otherwise; and
>
> (2)    there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

Section 361 of the Bankruptcy Code governs the providing of adequate protection that is required under Section 364 of the Bankruptcy Code and provides as follows:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
>
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

The liens that the Debtor proposes to grant to Legalist to secure repayment of the DIP Loans will prime the existing prepetition secured debt of the Prepetition Secured Parties. The SBA has not taken a position on the priming of its lien on substantially all of the Debtor's assets. The Noteholders do not consent to the relief requested herein. The absence of the Prepetition Secured Parties' consent is immaterial, however, because their interests in the DIP Collateral are adequately protected.

Case: 21-51050   Doc# 22   Filed: 08/05/21   Entered: 08/05/21 21:07:31   Page 33 of 41

Pursuant to the Supreme Court's decision in *United Savings Association v. Timbers of Inwood Forest Associates*, 108 S.Ct. 626, 629 (1988) and subsequent case law, the property interest that a debtor must adequately protect pursuant to Sections 361 of the Bankruptcy Code is only the value of the lien that secures the creditor's claim. 108 S.Ct. at 630*; In re McCombs Properties VI, Ltd.*, 88 B.R. 261, 266 (Bankr. C.D. Cal. 1988) ("*McCombs*"). Section 506(a) "limit[s] the secured status of a creditor (*i.e.*, the secured creditor's claim) to the lesser of the [allowed amount of the] claim or the value of the collateral." *Id.* In the case of an oversecured creditor, Section 506(a) and *Timbers* mandate that "there is no lack of adequate protection [even where there is] a decline in collateral value" provided the secured creditor remains oversecured. *Id.*; *In re Chauncy Street Assoc. Ltd. Partnership*, 107 B.R. 7, 8 (Bankr.D.Mass.1989). Here, there is no lack of adequate protection because the Prepetition Secured Parties are significantly oversecured.

It is well established that the existence of an equity cushion alone can constitute adequate protection to a secured creditor when a debtor seeks to incur senior secured debt and/or use cash collateral. *In re Mellor*, 734 F.2d 1396 (9th Cir. 1984). In *Mellor*, the Ninth Circuit held that a 20% equity cushion constituted adequate protection as a matter of law. *Id*. at 1400-01. The Ninth Circuit indicated that a cushion of less than 20% could also constitute adequate protection and cited with approval decisions holding that equity cushions of between 10% and 20% constituted adequate protection. *Id.* (*citing In re McGowan*, 6 B.R. 241, 243 (Bankr.E.D.Pa.1980) (holding that a 10% equity cushion is adequate protection)); *see also In re Kendall*, Case No. 04-85449, 2005 Bankr. LEXIS 1765, 2005 WL 2293573, at *1 (Bankr. C.D. Ill. 2005) (discussing conclusion that creditor was adequately protected by equity cushion of ten percent; *In re Boodrow,* 192 B.R. 57, 60 (Bankr. N.D.N.Y. 1995) (10% equity cushion constituted adequate protection).

Here, and in light of the Debtor's lengthy marketing of its assets for more than ten months, the APA before the Court is the best indication of the market value of the proposed DIP Collateral. As discussed in detail in the bidding procedures and sale motions, Bruker intends to purchase substantially all of the Debtor's assets for $12,500,000.00, among other conditions and obligations in the APA. Based on this valuation of the Collateral, the proposed lien of the DIP Lender, and the

interests in the proposed DIP Collateral of the Prepetition Secured Parties, there will still be a large equity cushion to protect the SBA and Noteholders as shown in the table below:

|  | Value of Collateral | $11,858,000 |  |  |
|---|---|---|---|---|
| **Lien Rank** | **Creditor** | **Approx. Claim** | **Equity Cushion** | **Percentage** |
| Senior | Legalist | $2,000,000 | $9,858,000 | 492% |
| Junior | SBA | $517,000 | $9,341,000 | 1,806% |
| Precautionary | Comet | N/A | N/A | N/A |
| Subordinated | Noteholders | $8,200,000 | $1,141,000 | 13.91% |
|  | Residual Equity | $1,141,000 |  |  |

With an equity cushion of $9,341,000 to protect its claim of only $517,000, the SBA has an equity cushion of approximately 1,806% of its secured claim. This is nearly one hundred times the 20% equity cushion that the Ninth Circuit found to be adequate protection in *In re Mellor*. The Noteholders also have a significant equity cushion of 13.91% of their secured claims. Accordingly, the Court should approve the DIP Loans and authorize the incurrence of the DIP Lender's senior secured lien pursuant to 11 U.S.C. § 364(d).

The Debtor respectfully submits that the DIP Loans satisfy section 364(c) and (d) of the Bankruptcy Code. The best credit terms available to the Debtor are those set forth in the DIP Credit Agreement. Thus, the Debtor believes that it is fair, reasonable, and necessary for the Court to approve the DIP Loans and enter the Interim DIP Order. In addition to representing the best terms presently available to the Debtor, the DIP financing is also in the best interests of the Debtor's estate. The DIP Loan will provide the Debtor needed funding to maintain and operate its business and to run the Debtor's proposed sale process. The DIP Loan therefore is plainly in the best interests of the Debtor's stakeholders.

**B.     The Proposed Interim DIP Order Should be Granted**

1.     The Court Should Conduct a Preliminary Expedited Hearing

Bankruptcy Rule 4001(c) provides that a final hearing on a motion to obtain financing may not be commenced earlier than 14 days after the service of such motion. Upon request, however,

DIP FINANCING AND CASH COLLATERAL MOTION

the Court is authorized to conduct a preliminary expedited hearing on a motion to access the DIP Loans to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing. Pursuant to Bankruptcy Rule 4001(c), SVXR requests that the Court conduct an expedited preliminary hearing on the Motion and (i) authorize the Debtor to obtain DIP financing in order to (i) maintain its ongoing operations and administer the Chapter 11 Case, (ii) avoid immediate and irreparable harm and prejudice to the Debtor's estate and all parties in interest and (iii) schedule a Final Hearing on the relief requested herein.

Absent authorization from the Court to access the DIP Loans on an interim basis pending a Final Hearing, the Debtor and its creditors will be immediately and irreparably harmed. As set forth above, the Debtor's ability to access the DIP Loan proceeds on the terms described herein is critical to its ability to effectively manage the auction sale process and continuity of its operations. Accordingly, the Interim DIP Order should be granted.

### 2. The Debtor Requires Immediate Access to the DIP Loans

The Court may grant interim relief in respect of a motion filed pursuant to section 363(c) or 364 of the Bankruptcy Code where, as here, interim relief is "necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2), (c)(2). In examining requests for interim relief under this rule, courts generally apply the same deferential business judgment standard applicable to other business decisions. *See, e.g., In re Seriosa,* Case No. 2:16-BK-14276-RK, 2016 WL 3478953, at *1 (Bankr. C.D. Cal. June 20, 2016).

The Debtor and its estate will suffer immediate and irreparable harm if the interim relief requested herein, including authorizing the Debtor to access up to $1,000,000.00 in DIP Loan proceeds on an interim basis, is not granted promptly after the Petition Date. As set forth in the First Day Declaration and the Grubb Declaration, and as further detailed above, if the expedited auction sale is disturbed or the Debtor's operations falter, a liquidation of the Debtor's assets could be imminent, and significant value to the Debtor's constituents will be lost. Further, the funding of administrative costs of the Chapter 11 Case provides stability and certainty to the auction sale process. Accordingly, for the reasons set forth above, entry of the Interim DIP Order is necessary

DIP FINANCING AND CASH COLLATERAL MOTION

to avoid immediate and irreparable harm to the Debtor's estate and is consistent with, and warranted under, Bankruptcy Rules 4001(b)(2) and (c)(2) as well as Bankruptcy Rule 6003(b).

**C.     The DIP Lender Should be Deemed a Good Faith Lender under Section 364(e)**

Section 364(e) of the Bankruptcy Code protects a good faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal. Section 364(e) provides that:

> The reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

As explained in detail herein and in the Grubb Declaration, the DIP Loans are the result of SVXR's reasonable and informed determination that the DIP Lender offered the most favorable terms under which SVXR could obtain postpetition financing. All negotiations regarding the DIP Loans were conducted in good faith and on an arm's length basis.[7] The terms and conditions of the DIP Loans are fair and reasonable, and the proceeds of the DIP Loans will be used only for purposes that are permissible under the Bankruptcy Code. Based on the foregoing, the DIP Lender should be accorded the benefits of section 364(e) of the Bankruptcy Code in respect of the DIP Loans because Legalist has offered to extend such financing in good faith.

**D.     Because All of the Debtor's Secured Creditors Are Adequately Protected, the Court Should Grant the Debtor Access to and Use of Cash Collateral Under Bankruptcy Code Section 363(c)(1) on a Final Basis**

The Debtor's use of property of the estate is governed by section 363 of the Bankruptcy Code. Section 363(c)(1) provides that:

> If the business of the debtor is authorized to be operated under section ... 1108 ... of this title and unless the court

---

[7]     Further, section 364(e) provides a lender with a presumption of good faith. *Weinstein, Eisen, Weiss LLP* v. *Gill (In re Cooper Common, LLC)*, 424 F.3d 963, 969 (9th Cir. 2005).

orders otherwise, the trustee [or debtor in possession] may enter into transactions, including the sale or lease of property of the estates, in the ordinary course of business, without notice or hearing, and may use property of the estates in the ordinary course of business without notice or hearing.

The Bankruptcy Code establishes a special requirement, however, regarding the debtor in possession's use of "cash collateral," defined as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estates and an entity other than the estates have an interest . . . ." 11 U.S.C. § 363(a). Section 363(c)(2) of the Bankruptcy Code permits the debtor in possession to use, sell, or lease cash collateral under subsection (c)(1) only if either of two alternative circumstances exists:

(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

Here, although the SBA has not taken a position regarding consent to the Debtor's proposed use of cash collateral, as set forth in detail above,[8] the SBA's interests in the Debtor's Collateral is adequately protected. The Debtor understands that the Noteholders are generally amenable to the Debtor's use of Cash Collateral consistent with the Budget, and the Debtor and Noteholders are engaged in discussions regarding the Noteholders' consent to the Debtor's use of Cash Collateral.

**E.      The Scope of the Carve-Out Is Appropriate**

The DIP Liens are subject to a carve-out for certain fees and expenses (the "<u>Carve-Out</u>"). Without the Carve-Out, the Debtor and other parties-in-interest may be deprived of certain rights and powers because the services for which professionals may be paid in this Chapter 11 Case would be restricted. *See In re Ames Dep't Stores, Inc.,* 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (observing that courts insist on carve-outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced"). The Carve-Out does not directly or indirectly deprive the Debtor's estate or other parties-in-interest of possible rights and powers. Additionally, the Carve-Out ensures that assets

---

[8]     *See* (29:2-17) *supra.*

will be available for the payment of fees of the Clerk of Court or the Office of the United States Trustee for the Northern District of California, and professional fees of the Debtor and any statutory Committee appointed in this Chapter 11 Case.

## F.  The Automatic Stay Should Be Modified on a Limited Basis

The relief requested herein contemplates a modification of the automatic stay to permit the Debtor to grant the DIP Liens.  Stay modifications of this kind are ordinary and standard features for DIP financing, and in the Debtor's business judgment, are reasonable and fair under the present circumstances.  *See, e.g., In re Imperial Toy LLC,* Case No. 19-52335 (Bankr. N.D. Cal. Nov. 20, 2019) [Docket No. 29]; *In re Gardens Reg'l Hosp.*, No. 2:16-BK-17463-ER, 2017 WL 7101146 (Bankr. C.D. Cal. Jul. 28, 2016); *In re Fleetwood Enterprises, Inc., et al.,* Case No. 09-14254-MJ (Bankr. C.D. Cal. Apr. 1, 2009) [Docket No. 183]; *In re SunEdison, Inc.,* Case No. 16-10992 (SMB) (Bankr. S.D.N.Y. Apr. 26, 2016) [Docket No. 87]; *In re Aeropostale, Inc.,* Case No. 16-11275 (SHL) (Bankr. S.D.N.Y. May 06, 2016) [Docket No. 99].

## G.  Bankruptcy Rule 4001(a)(3) Should Be Waived

The Debtor requests a waiver of the stay of the effectiveness of the order approving this Motion under Bankruptcy Rule 4001(a)(3). Bankruptcy Rule 4001(a)(3) provides, "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of fourteen days after entry of the order, unless the court orders otherwise." As explained herein, access to the DIP Loans is essential to prevent irreparable damage to the Debtor's estate. Accordingly, ample cause exists to justify the waiver of the fourteen-day stay imposed by Bankruptcy Rule 4001(a)(3), to the extent such stay applies.

## H.  Bankruptcy Rule 6003 Has Been Satisfied

Bankruptcy Rule 6003(b) states that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before 21 days after filing of the petition. The Debtor's estate would suffer immediate and irreparable harm if the relief sought herein is not

promptly granted. Accordingly, the Debtor submits that the relief requested herein is necessary to avoid immediate and irreparable harm and, therefore, Bankruptcy Rule 6003 is satisfied.

## VI.    REQUEST FOR BANKRUPTCY RULE 6004(a) AND (h) WAIVERS

To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtor's estate.  Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## VII.    NOTICE

Notice of this Motion will be provided to (i) the Office of the United States Trustee for Region 17 (Attn: Marta E. Villacorta, Esq. and Suhey Ramirez, Esq.); (ii) the Debtor's 30 largest unsecured creditors on a consolidated basis; (iii) the United States Small Business Administration; (iv) counsel to the Noteholders and each Noteholder individually; (v) Comet; (vi) the DIP Lender; and (vii) those persons who have formally appeared in this Chapter 11 Case and requested service pursuant to Bankruptcy Rule 2002. Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtor respectfully submits that no further notice is required.  No previous request for the relief sought herein has been made by the Debtor to this or any other court.

## VIII.    CONCLUSION

Based upon the foregoing, the Debtor requests entry of the Interim DIP Order under sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Bankruptcy Rule 4001-2: authorizing the Debtor to (a) enter into and incur credit under the DIP Credit Agreement with Legalist, (b) provide Legalist a senior-secured lien and superpriority administrative expense claim, and (c) use cash collateral to operate its business and manage its estate.

WHEREFORE the Debtor respectfully requests entry of an order granting the relief requested and providing such other and further relief as is just and proper.

Dated: August 5, 2021

PAUL HASTINGS LLP


By      */s/ Todd Schwartz*
                TODD SCHWARTZ

                *Proposed Attorneys for Debtor and*
                *Debtor in Possession*

DIP FINANCING AND CASH COLLATERAL MOTION