1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>Exhibit C</u>**

**DIP Credit Agreement**

DocuSign Envelope ID: 97549F1A-7256-4954-BB41-105F805CBA86

## DEBTOR-IN-POSSESSION
## TERM LOAN CREDIT AGREEMENT

### among

### SVXR Inc.,
### as Debtor,

### and

### Certain Investment Fund(s) for Which
### LEGALIST DIP GP, LLC
### Serves as General Partner,
### as DIP Lender

This DEBTOR-IN-POSSESSION TERM LOAN CREDIT AGREEMENT (the "**Agreement**"), dated as of August 5, 2021, is entered into among SVXR Inc. (the "**Debtor**") and certain investment fund(s) for which Legalist DIP GP, LLC serves as general partner, as lender, agent, and collateral agent (in such capacities, the "**DIP Lender**").

### RECITALS

WHEREAS, on August 4, 2021 (the "**Petition Date**"), the Debtor filed a voluntary petition in the United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**") for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and its chapter 11 case is being administered under the caption *In re SVXR Inc.*, No. 21-51050 (the "**Case**");

WHEREAS, the Debtor has continued in possession of its assets and management of its business pursuant to Bankruptcy Code sections 1107 and 1108;

WHEREAS, an immediate and ongoing need exists for the Debtor to obtain funds in order to fund the Case and work toward a successful exit from chapter 11 and, accordingly, the Debtor requested that the DIP Lender extend the DIP Loans;

WHEREAS, the DIP Lender is willing to extend DIP Loans (each a "**DIP Draw**") on the terms hereof in an aggregate maximum amount of $2,000,000 (the "**DIP Commitment**") in accordance with the allocation on Addendum 1;

NOW THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto (the "**Parties**") agree as follows:

### ARTICLE I
### DEFINED TERMS

**Section 1.01 Definitions.** As used in this Agreement:

"**Affiliate**" has the meaning given to it in the Bankruptcy Code.

"**Agreement**" has the meaning given to it in the preamble hereto.

"**Approved Form**" means in form and substance acceptable to (as evidenced by the prior written consent of) the DIP Lender.

"**Avoidance Actions**" means all claims and causes of action described in Bankruptcy Code chapter 5, or any non-bankruptcy law referenced therein, and all proceeds thereof.

"**Bankruptcy Code**" has the meaning given to it in the Recitals.

"**Bankruptcy Court**" has the meaning given to it in the Recitals.

"**Borrowing Request**" means an executed borrowing request substantially in the form attached hereto as Exhibit A and otherwise in Approved Form.

"**Budget**" means a budget encompassing, on a monthly basis, the period from the date hereof through the Maturity Date, but not more than a 13-week period, and containing detailed line items of the Debtor's projected receipts and disbursements, in Approved Form, including as the same may be revised by the Debtor from time to time in Approved Form. The Budget as of the date hereof is attached hereto as Exhibit B.

"**Business Day**" means every day that is not a Saturday, Sunday, or Legal Holiday (as defined in Federal Rule of Bankruptcy Procedure 9006(a)(6)).

"**Case**" has the meaning given to it in the Recitals.

"**Commitment Fee**" has the meaning given to it in Section 2.05(i).

"**Debt**" has the meaning given to it in the Bankruptcy Code.

"**Debtor**" has the meaning given to it in the preamble hereto.

"**DIP Claims**" means "superpriority" administrative-expense claims with priority over (x) all other administrative-expense claims, expenses, and costs permitted by, described in, or entitled to priority under the Bankruptcy Code (subject to the Carveout (as defined in the DIP Orders)) and (y) all other unsecured claims against the Debtor.

"**DIP Collateral**" means all assets and properties, whether real, personal, intellectual, or otherwise, whether tangible or intangible, whether domestic, foreign, or international, that the Debtor now owns or hereafter acquires, or to or in which the Debtor, now or in the future, holds any right, title, or interest (whether fixed, contingent, inchoate, or otherwise), expressly including all Avoidance Actions, together with (in each case) all proceeds thereof; provided that the DIP Collateral shall not include Excluded Collateral.

"**DIP Commitment**" has the meaning given to it in the Recitals.

"**DIP Draw**" has the meaning given to it in the Recitals.

"**DIP Lender**" has the meaning given to it in the preamble hereto.

"**DIP Lender Expenses**" has the meaning given to it in Section 11.03.

"**DIP Liens**" has the meaning given to it in Section 10.02.

"**DIP Loan Documents**" means this Agreement, all Borrowing Requests, the DIP Credit Agreement, the DIP Orders, the Budget and related reporting, and all other agreements, documents, and instruments in any way arising from, related to, or connected with the DIP Commitment, DIP Loans, DIP Claims, and/or DIP Liens, together with all schedules, exhibits, and other addenda thereto, all of which shall be in Approved Form.

"**DIP Loans**" has the meaning given to it in Section 2.01(a).

"**DIP Obligations**" means DIP Lender Expenses, together with all principal of, and interest and fees on (including, without limitation, any applicable Undrawn Line Fee, the Monitoring Fee, Commitment Fee, Underwriting Fee, and any applicable Makewhole Fee) the DIP Loans, any amount owed to any

2e3be42b6e40a935

Indemnified Person, and any other amount owed by the Debtor under any DIP Loan Document.

"**DIP Orders**" means the Interim DIP Order and/or Final DIP Order, as applicable.

"**Effective Date**" has the meaning given to it in Section 3.02.

"**Event of Default**" has the meaning given to it in Section 8.01.

"**Excluded Collateral**" means the assets and properties set forth on Schedule 4.

"**Existing Liens**" means the Liens set forth on Schedule 2.

"**Final DIP Order**" means a final order of the Bankruptcy Court approving the DIP Loans in Approved Form.

"**Indemnified Liabilities**" has the meaning set forth in Section 7.01.

"**Indemnified Persons**" has the meaning set forth in Section 7.01.

"**Interim DIP Order**" means an interim order of the Bankruptcy Court approving the DIP Loans in Approved Form.

"**Lien**" has the meaning given to it in the Bankruptcy Code.

"**Makewhole Fee**" has the meaning given to it in Section 2.07(c).

"**Maturity Date**" means the earliest to occur of (x) four months after the Effective Date of the first DIP Draw, (y) repayment in full of all outstanding DIP Loans, and (z) the acceleration of the DIP Loans following an Event of Default.

"**Milestones**" means, collectively, the events and corresponding deadlines set forth on Schedule 1.

"**Monitoring Fee**" has the meaning given to it in Section 2.05(iii).

"**Permitted Senior Liens**" means the Liens set forth on Schedule 3.

"**Permitted Variances**" has the meaning given to it in

"**Person**" has the meaning given to it in the Bankruptcy Code.

"**Petition Date**" has the meaning given to it in the Recitals.

"**Underwriting Fee**" has the meaning given to it in Section 2.05(ii).

"**Undrawn Line Fee**" has the meaning given to it in Section 2.04(c).

"**Uniform Commercial Code**" has the meaning given to it in Section 11.08. [1]

## ARTICLE II
## DIP LOANS

### Section 2.01 In General.

(a)   Subject to the terms hereof, the DIP Lender agrees, upon the Effective Date, to make available to the Debtor, in one or more DIP Draws, term loans in the full amount DIP Commitment (such term loans, the "**DIP Loans**").

(b)   Subject to Section 2.7, all amounts owed hereunder with respect to the DIP Loans shall be paid in full no later than the

Maturity Date. Any principal amount of the DIP Loans repaid or prepaid may not be reborrowed.

**Section 2.02 Use of Proceeds.** The proceeds of the DIP Loans shall be used by the Debtor solely to:

(i)   Pay DIP Lender Expenses;

(ii)   Pay all other DIP Obligations; and

(iii)   Pay other amounts permitted under the Budget.

(iv)   In no event shall any portion of the DIP Loans be used for payment of fees, costs, or expenses incurred by any party in (x) investigating or pursuing any claim or cause of action against the DIP Lender, any Affiliate thereof, or any other Indemnified Person or (y) questioning or challenging, or taking any other action that could reasonably be expected otherwise to impair, any DIP Lien or DIP Claim (or the priority, validity, or enforceability thereof), any DIP Obligation, any DIP Loan Document, or any right or remedy of the DIP Lender.

**Section 2.03 [Omitted].**

**Section 2.04 Interest; Undrawn Line Fee.**

(a)   Interest Rate. The outstanding principal amount of the DIP Loans (together with all other due and payable DIP Obligations) shall accrue interest from the Effective Date at the U.S. prime rate (subject to a 4.00% floor) plus 11.00% per year, which shall accrue and be compounded and capitalized monthly; provided that, if the Debtor failed to move for approval of the DIP Orders by August 11, 2021, the foregoing reference to 11.00% shall instead be to 12.00%.

(b)   Default Interest. While an Event of Default has occurred and is continuing, the outstanding principal amount of the DIP Loans (together with all other due and payable DIP Obligations) shall accrue an additional 4.75% in interest per year, which shall accrue and be compounded and capitalized monthly. Payment or acceptance of the increased rates of interest provided for in this Section 2.4(c) is not a permitted alternative to timely payment and shall not constitute a waiver of any Event of Default or otherwise prejudice or limit any rights or remedies of the DIP Lender.

(c)   Undrawn Line Fee. Any undrawn portion of the DIP Commitment shall accrue a fee (the "**Undrawn Line Fee**") from the date hereof at 3.00% per year, which shall accrue and be compounded and capitalized monthly.

(d)   Payment Terms. All interest (including default interest) and any applicable Undrawn Line Fee (which shall be DIP Obligations for all purposes), together with the fees described in Section 2.05, shall be compounded and capitalized in arrears on the first Business Day of month and due and payable upon the Maturity Date.

**Section 2.05 Fees.** The following fees shall be deemed fully and irrevocably earned upon the date hereof and shall be DIP Obligations for all purposes:

(i)   A onetime "**Commitment Fee**" of 2.00% of the DIP Commitment, due and payable in cash upon the Maturity Date;

---

[1]   Capitalized terms used but not defined herein have the meanings given to them in the DIP Orders.

(ii) A onetime "**Underwriting Fee**" of 1.50% of the DIP Commitment, due and payable in cash upon the Maturity Date; and

(iii) A "**Monitoring Fee**" of 1.50% of the DIP Commitment per year, payable in kind monthly as provided in Section 2.04(d).

**Section 2.06 <u>Repayment</u>.** Subject to Sections 2.07, the DIP Loans shall be due and payable, and the Debtor unconditionally agrees and promises to repay to the DIP Lender all other outstanding DIP Obligations, in cash on the Maturity Date.

**Section 2.07 <u>Prepayments</u>.**

(a) <u>Voluntary Prepayments</u>. The DIP Loans may be voluntarily repaid prior to the Maturity Date beginning 45 days after the Effective Date, in the minimum amount of $50,000, subject (during the following 15 days) to the contemporaneous payment of the applicable Makewhole Fee.

(b) <u>Mandatory Repayments</u>. The DIP Loans shall be mandatorily repaid to the extent of, and within 10 Business Days of the Debtor's receipt of any net proceeds from a sale or other disposition of substantially all of the Debtor's assets, including the DIP Collateral; <u>provided</u> that any such sale or other disposition of substantially all of the Debtor's assets shall occur in Approved Form, and that any repayment required to be made prior to 60 days after the Effective Date shall be subject to the contemporaneous payment of the applicable Makewhole Fee.

(c) As used in this Section 2.07, "**Makewhole Fee**" means an additional fee of 3.75% of the amount of voluntarily or required to be repaid, which fee shall be a DIP Obligation for all purposes.

**Section 2.08 <u>General Provisions Regarding Payments</u>.**

(a) <u>Payments</u>. All payments by or on behalf of the Debtor of principal, interest, fees, or other DIP Obligations shall be made in U.S. dollars in same-day funds, without defense, setoff, or counterclaim of any kind, free of any restriction or condition, and delivered to DIP Lender so as to be actually received by it no later than 5:00 PM prevailing Eastern Time. All funds actually received by the DIP Lender after that time shall be deemed to have been paid on the next Business Day.

(b) <u>Non-Conforming Payments</u>. Any payment not conforming to the foregoing Clause (a) shall be deemed a non-conforming payment and shall not be deemed to have been actually received by the DIP Lender until the later of (x) the time such funds become available funds and (y) the next Business Day. Interest and fees shall continue to accrue on any principal (together with all other due and payable DIP Obligations) until such funds become available funds.

(c) <u>Payments to Include Accrued Interest</u>. All payments in respect of the principal amount of the DIP Loans shall include payment of accrued interest on the principal amount being repaid or prepaid, and all such payments shall be applied in accordance with Section 8.03.

(d) <u>Business Days</u>. Whenever a payment hereunder is due on a day that is not a Business Day, such payment shall be made on the next Business Day.

**Section 2.09 <u>Termination of Commitments</u>.** The DIP Commitment of the DIP Lender shall be automatically and permanently reduced (x) by the principal amount of each DIP Loan made by the DIP Lender pursuant to Section 2.01(b) and (y) in full, upon (i) acceleration of the DIP Loans under Section 8.02(a)(i) or (ii) the election of the DIP Lender while an Event of Default has occurred and is continuing.

**ARTICLE III**
**CONDITIONS PRECEDENT**

**Section 3.01 <u>Conditions Precedent to DIP Draws</u>.** The obligation of the DIP Lender to make DIP Draws available to the Debtor in the aggregate amount of the DIP Commitment (provided no Event of Default shall (x) have occurred and be continuing or (y) be reasonably likely to result therefrom), is subject to the occurrence (with respect to each such DIP Draw) of all of:

(i) The Bankruptcy Court's entry of applicable DIP Order, which remains in full force and effect as so entered and in Approved Form; <u>provided</u> that, upon entry of the Interim DIP Order but prior to entry of the Final DIP Order, the Debtor shall be permitted to draw no more than $1,000,000 of the DIP Commitment;

(ii) [Omitted];

(iii) The Debtor's delivery of an executed Borrowing Request in the amount of such DIP Draw; and

(iv) Each of the representations and warranties set forth in this Agreement and in each other DIP Loan Document shall be true and correct as of the Effective Date, except to the extent that any such representation or warranty expressly relates to an earlier date, in which case each such representation and warranty shall have been true and correct as of such earlier date.

**Section 3.02 <u>Effective Date</u>.** With respect to any DIP Draw, the date on which all of the conditions precedent described in Section 3.01 have been met shall be the "**Effective Date**."

**ARTICLE IV**
**REPRESENTATIONS AND WARRANTIES OF DEBTOR**

To induce the DIP Lender to provide the DIP Loans, the Debtor makes to the DIP Lender all of following representations and warranties, which representations and warranties shall (x) be deemed to have been made and remade as of each Effective Date and (y) survive the execution and delivery of this Agreement:

**Section 4.01 <u>Corporate Status; Corporate Authorization</u>.** The Debtor is duly organized, validly existing, and in good standing under the laws of its jurisdiction of organization and is duly qualified and in good standing in every other jurisdiction where it is doing business, and the execution, delivery, and performance by the Debtor of this Agreement (x) are within its authority, (y) have been duly authorized, and (z) do not conflict with or contravene its corporate-governance or organizational documents.

**Section 4.02 <u>Execution and Binding Effect</u>.** Upon execution and delivery hereof, this Agreement shall constitute the legal, valid, and binding obligation of the Debtor, enforceable in accordance with its terms.

**Section 4.03 <u>DIP Collateral</u>.** The Debtor has good and marketable title to all DIP Collateral, free of all Liens, security interests, pledges, and other encumbrances, other than the DIP Liens and Existing Liens.

**Section 4.04 Absence of Material Adverse Effect.** There has been no act, condition, or event that has had, or may reasonably be expected to have, a material adverse effect on the Debtor or its operations since the Petition Date.

**Section 4.05 Misstatements and Omissions.** Since the Petition Date, no information furnished or made available by the Debtor (directly or indirectly) to the DIP Lender (including all information contained in the Case's docket) (x) contains any material misstatement of fact or (y) omits any material fact necessary to make such information not misleading.

## ARTICLE V
## AFFIRMATIVE COVENANTS

So long as any DIP Obligation remains outstanding, the Debtor shall perform all of the following covenants:

**Section 5.01 Budget Reporting and Compliance.**

(a) No later than the first Tuesday of each month, the Debtor shall provide the DIP Lender (each in Approved Form):

    (i) A variance report (certified by an appropriate officer of the Debtor) comparing, on a line-item basis, actual cash receipts and disbursements to those contained in the Budget, for both the preceding month and cumulatively from the date hereof, together with detailed explanations of all variances (if any); and

    (ii) A rolling 13-week cashflow forecast for the Debtor.

(b) In no event shall aggregate cash receipts vary downward, or aggregate cash disbursements vary upward, from the Budget (on a line-item, monthly, or cumulative basis) by more than 10.0% (the "**Permitted Variances**").

**Section 5.02 Accounting; Financial Statements.** The Debtor shall keep true and accurate books of record and account in accordance with past practice and the requirements of the Bankruptcy Court and sufficient to permit the preparation of financial statements in accordance with generally accepted accounting principles.

**Section 5.03 Maintenance of Existence.** The Debtor shall do all things necessary to maintain (x) its corporate or other existence in accordance with its organizational documents (which shall not be amended without the prior written consent of the DIP Lender) and (y) all rights, licenses, and franchises.

**Section 5.04 Preservation of Assets.** The Debtor shall maintain its assets (including all DIP Collateral) in good operating conditions and shall make such repairs and replacements as are reasonably required, in accordance with the Budget; provided that, in no event shall the DIP Lender be surcharged with respect to such maintenance of the DIP Collateral.

**Section 5.05 Notice of Material Events.** The Debtor shall notify the DIP Lender promptly in writing of:

(i) The occurrence of any default or Event of Default;

(ii) Any threatened or pending litigation or other proceeding or claim materially affecting the Debtor; and

(iii) Any other development that results in, or could reasonably be expected to result in, a material adverse effect on the Debtor or its operations.

**Section 5.06 Use of Proceeds.** The Debtor shall use the proceeds of the DIP Loans only as permitted by Section 2.02.

**Section 5.07 [Omitted].**

**Section 5.08 Taxes.** The Debtor will pay its tax liabilities accruing after the Petition Date before the same shall become delinquent or in default, except where the validity or amount thereof is being contested in good faith by appropriate proceedings and the Debtor has set aside on its books adequate reserves in accordance with generally accepted accounting principles.

**Section 5.09 [Omitted].**

**Section 5.10 Compliance with Laws.** The Debtor shall comply with all applicable laws, rules, and regulations.

**Section 5.11 [Omitted].**

**Section 5.12 Full Access to Information.** The Debtor shall, within a commercially reasonable timeframe, provide the DIP Lender with all requested information and full and complete access to all executives, directors, and advisors of the Debtor, together with access to inspect any DIP Collateral, when reasonably requested by the DIP Lender; provided that, without any prior request from the DIP Lender, the Debtor shall promptly deliver to the DIP Lender copies of all offers (whether formal or informal, firm or contingent) to acquire the Debtor, the DIP Collateral, or any part thereof.

**Section 5.13 Stay, Extension, and Usury Laws.** The Debtor covenants that it will not at any time in any manner whatsoever claim or take the benefit or advantage of any stay, extension, or usury law (wherever enacted) that may affect the performance in full of this Agreement.

**Section 5.14 Timely Payment of DIP Lender Expenses, Other DIP Obligations.** The Debtor shall, in addition to repaying all other DIP Obligations when due and payable hereunder, timely pay all DIP Lender Expenses when due and payable hereunder.

**Section 5.15 Further Assurances.** The Debtor shall reasonably cooperate with the DIP Lender, and take such actions and execute such documents and instruments as the DIP Lender may reasonably request, in furtherance of this Agreement and the transactions contemplated hereby, expressly including all steps necessary or desirable to maintain the priority, validity, and enforceability of the DIP Claims and DIP Liens on the DIP Collateral.

## ARTICLE VI
## NEGATIVE COVENANTS

So long as any DIP Obligation remains outstanding, the Debtor shall perform all of the following covenants:

**Section 6.01 Indebtedness.** Any Debt in excess of those amounts expressly contemplated by the Budget, including the Permitted Variances, other than (w) the Carve-Out, (x) Debt existing as of the Petition Date, (y) the DIP Obligations, and (z) Debt expressly contemplated by the Budget, shall not be paid out of any proceeds of the DIP Loans.

**Section 6.02 Liens.** The Debtor shall not (directly or indirectly) incur, create, or permit to exist any Lien other than (x) Existing Liens and (y) the DIP Liens.

**Section 6.03 <u>Superpriority Claims</u>.** The Debtor shall not (directly or indirectly) incur, create, or permit to exist any administrative-expense claim, expense, or cost with priority senior or equal to the DIP Claims.

**Section 6.04 <u>Payments</u>.** The Debtor shall not make any payment (other than in respect of the DIP Obligations) not expressly contemplated by the Budget, subject to Permitted Variances and the Carve-Out.

**Section 6.05 <u>Merger or Sale</u>.** Without the prior written consent of the DIP Lender, the Debtor shall not (directly or indirectly) (x) merge or consolidate with another Person or (y) unless the net proceeds thereof shall be sufficient to repay the DIP Obligations (subject to Section 2.07) in full, sell any DIP Collateral; <u>provided</u> any such sale shall be in Approved Form.

**Section 6.06 <u>Business</u>.** The Debtor shall not engage in any business other than its line of business as of the Petition Date.

**Section 6.07 <u>Amendments to Organizational Documents</u>.** The Debtor shall not amend any corporate-governance or organizational document.

## ARTICLE VII
## INDEMNIFICATION

**Section 7.01 <u>Indemnification by the Debtor</u>.** The Debtor shall indemnify the DIP Lender and its Affiliates (expressly including Legalist, Inc. and Legalist DIP GP, LLC), together with their respective partners, directors, officers, managers, members, partners, investors, employees, contractors, agents, administrators, advisors (including attorneys), and representatives, against, and hold each such Person (each an "**Indemnified Person**") harmless from, all liabilities, obligations, losses, damages, penalties, claims, actions, causes of action, judgments, suits, costs, expenses, fees, and disbursements, of any kind or nature whatsoever, whether direct, indirect, special, exemplary, or consequential and whether based on federal, state, foreign, or international laws, statutes, rules, or regulations, that may be imposed on, incurred by, or asserted against such Indemnified Person, in any way arising from, in connection with, or relating to any DIP Loan Document, the transactions contemplated thereby, or any action taken or not taken in connection therewith (collectively, the "**Indemnified Liabilities**"); <u>provided</u> that such indemnity shall not be available to an Indemnified Person to the extent that such Indemnified Liability was a direct result, as determined by a court of competent jurisdiction, in a final and non-appealable order, of the gross negligence or willful misconduct of such Indemnified Person. The Debtor's payment obligations with respect to any Indemnified Liability shall constitute DIP Obligations for all purposes, and each Indemnified Person not a Party shall be a third-party beneficiary of this Agreement for purposes enforcing such obligations.

## ARTICLE VIII
## EVENTS OF DEFAULT

**Section 8.01 <u>Events of Default</u>.** The occurrence and continuation of each of the following shall constitute an "**Event of Default**":

(i)    The Debtor shall:

    (A)    Fail to timely pay any DIP Lender Expense or other DIP Obligation;

    (B)    Grant or permit to exist any Lien on any DIP Collateral, other than the DIP Liens and Existing Liens; or

    (C)    Make any payment not expressly contemplated by, or otherwise fail to comply with, the Budget (subject to Permitted Variances);

(ii)    Any representation, warranty, certification, or other statement made, or deemed made in or delivered pursuant to any DIP Loan Document, by the Debtor shall be false in any material respect as of the date so made, deemed made, or delivered;

(iii)    The Bankruptcy Court or another court of competent jurisdiction shall enter an order, without the prior written consent of the DIP Lender:

    (A)    Granting adequate protection, under Bankruptcy Code section 361, 362, 363, or 364 or otherwise, to any party, except as set forth in the Budget;

    (B)    Granting relief from the automatic stay, under Bankruptcy Code section 362 or otherwise, to any party, other than the DIP Lender, with respect to any DIP Collateral;

    (C)    Surcharging, under Bankruptcy Code section 506(c) or otherwise, any DIP Collateral in any amount, or subjecting the DIP Lender or DIP Collateral to the equitable principle of marshaling;

    (D)    Approving credit or debt (other than the DIP Loans) secured by a Lien, under Bankruptcy Code section 364 or otherwise, on any DIP Collateral;

    (E)    Approving any administrative-expense claim, expense, or cost against the Debtor (other than the DIP Claims), under Bankruptcy Code section 364, 502, 507, or otherwise, with priority of payment senior or equal to the DIP Claims, (subject to the Carveout (as defined in the DIP Orders));

    (F)    Modifying, staying, vacating, or rescinding any part of any DIP Order;

    (G)    Holding, adjudicating, or declaring any DIP Lien or DIP Claim (or the priority, validity, or enforceability thereof), any DIP Obligation, any DIP Loan Document, or any right or remedy of the DIP Lender to be invalid, unenforceable, or otherwise subject to question, challenge, or impairment;

    (H)    Enjoining, restraining, or in any other way preventing a Debtor from conducting any material part its business affairs;

    (I)    Appointing an examiner or trustee in the Debtor's Case;

    (J)    Confirming any chapter 11 plan that does not provide for repayment in full in cash on the effective date of such plan of all outstanding DIP Obligations;

    (K)    Converting the Debtor's Case to a case under Bankruptcy Code chapter 7; or

    (L)    Dismissing the Debtor's Case;

(iv)    The Debtor, or an Affiliate thereof, shall commence any action in, file any motion or application with, or make any other submission to the Bankruptcy Court or another court of

competent jurisdiction (or join in or otherwise support the same) (x) seeking entry of any order described in the foregoing Clause (iii) or (y) questioning or challenging, or that could be reasonably expected otherwise to impair, any DIP Lien or DIP Claim (or the priority, validity, or enforceability thereof), any DIP Obligation, any DIP Loan Document, or any right or remedy of the DIP Lender;

(v) Any party (other than the Debtor or an Affiliate thereof) shall commence any action in, file any motion or application with, or make any other submission to the Bankruptcy Court or another court of competent jurisdiction (x) seeking entry of any order described in the foregoing Clause (iii) or (y) questioning or challenging, or that could be reasonably expected otherwise to impair, any DIP Lien or DIP Claim (or the priority, validity, or enforceability thereof), any DIP Obligation, any DIP Loan Document, or any right or remedy of the DIP Lender; provided that the Debtor has not timely filed a reasonable objection or opposition to such action, motion, or other submission; and

(vi) The Debtor shall fail to perform or comply with any other agreement, covenant, term, or condition in any DIP Loan Document, other than those listed in the preceding Clauses (i)-(v); provided such failure has not been remedied (if capable of remedy) within 21 days of the earlier of (x) the Debtor's becoming aware of such failure or (ii) the Debtor's receipt of written notice from the DIP Lender of such failure.

**Section 8.02 Remedies.**

(a) Subject only to the DIP Orders, and notwithstanding Bankruptcy Code section 362, while any Event of Default has occurred and is continuing, the DIP Lender may immediately, without further order of, or application to, the Bankruptcy Court:

(i) Declare the DIP Commitment terminated; and

(ii) Declare all DIP Obligations immediately due and payable, without the requirement of presentment, demand, protest, or any other notice, all of which are waived by the Debtor.

(b) While any Event of Default has occurred and is continuing, the DIP Lender may move or apply to the Bankruptcy Court for entry of an order:

(i) Terminating the automatic stay with respect to any DIP Collateral;

(ii) Terminating the Debtor's exclusivity to propose a chapter 11 plan;

(iii) Appointing an examiner or chapter 11 trustee; and

(iv) Converting the Debtor's Case to chapter 7.

(c) If the DIP Lender so moves or applies, the Debtor shall be limited to contesting solely whether the Event of Default has occurred and/or is continuing. The Debtor expressly waives the right to contest such relief whatsoever beyond the foregoing limitation.

(d) In addition to the rights and remedies enumerated in the foregoing Clauses (a) and (b), the DIP Lender shall be entitled, while any Event of Default has occurred and is continuing, to pursue all rights and remedies available to it under the Bankruptcy

Code (whether as a creditor, party in interest, or otherwise) or as a secured party under the Uniform Commercial Code.

(e) For the avoidance of doubt, all costs incurred by the DIP Lender in connection with this Section 8.02 shall constitute DIP Lender Expenses and DIP Obligations for all purposes.

**Section 8.03 Application of Funds.** If the DIP Lender receives any payment from or on behalf of the Debtor, or collects any money or property pursuant to this Article VIII, it shall pay out the money or property as follows:

(i) First: To the DIP Lender, for accrued and unpaid DIP Lender Expenses;

(ii) Second: To the DIP Lender, for accrued and unpaid interest (including default interest) and applicable fees;

(iii) Third: To the DIP Lender, for unpaid principal outstanding on the DIP Loans;

(iv) Fourth: To the DIP Lender, for all other unpaid DIP Obligations (including reasonable reserves for Indemnified Liabilities and other contingent DIP Obligations); and

(v) Fifth: After all DIP Obligations (including reasonable reserves) have been indefeasibly paid in full in cash and the DIP Commitment has terminated, the DIP Lender shall distribute any surplus in accordance with a final, non-appealable Bankruptcy Court order.

For the avoidance of doubt, the Debtor shall remain liable for any deficiency.

**ARTICLE IX**
**[OMITTED]**

**ARTICLE X**
**COLLATERAL, SECURITY, AND PRIORITY**

**Section 10.01 DIP Claims.** The Debtor covenants, represents, and warrants that, upon entry of the Interim DIP Order, all DIP Obligations shall, pursuant to Bankruptcy Code section 364(c)(1), constitute DIP Claims, payable from and having recourse to all property of the Debtor's estates (expressly including all DIP Collateral).

**Section 10.02 Grant of Security Interest.** Subject to the priorities set forth in Section 10.03, as to all DIP Collateral, the Debtor assigns and conveys as security, grants a security interest in and Lien on, hypothecates, mortgages, pledges, and sets over and unto the DIP Lender all right, title, and interest of the Debtor in the DIP Collateral (collectively, the "**DIP Liens**"), including all proceeds of Avoidance Actions. The Debtor acknowledges that, pursuant to the Interim DIP Order, the DIP Liens granted to the DIP Lender in all DIP Collateral shall be automatically perfected without reference to any notice or recordation requirements of non-bankruptcy law.

**Section 10.03 DIP Liens.** The Debtor covenants, represents, and warrants that, upon entry of Interim DIP Order, the DIP Liens shall comprise, pursuant to Bankruptcy Code section 364(d)(1), automatically perfected, senior DIP Liens on all DIP Collateral subject to Existing Liens.

**Section 10.04 Further Assurances.** The Debtor further agrees that, if reasonably requested by the DIP Lender, it shall enter into any separate security agreement, control agreement, pledge agreement, or other similar documentation or instrument with

respect to any DIP Collateral that the DIP Lender may request, all expenses of which incurred by the DIP Lender shall constitute DIP Lender Expenses.

## ARTICLE XI
## MISCELLANEOUS

**Section 11.01 Amendments and Waivers.** No amendment, modification, termination, or waiver of any provision hereof, or consent to any departure by the Debtor therefrom, shall be effective without the express written consent of the DIP Lender. Any such waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given. No notice to or demand on the Debtor in any given instance shall entitle the Debtor to any other or further notice or demand in similar or other circumstances.

**Section 11.02 Notices.** All notices, requests, demands, and other communications under any DIP Loan Document shall be in writing, delivered by electronic mail as follows, and deemed effective upon delivery:

(i)   If to the Debtor:

Attn: Dan Trepanier (dan.trepanier@svxr.com);

With a copy (which shall not constitute notice) to:

Paul Hastings, LLP
Attn: Todd M. Schwartz, Esq. & Will Clark Farmer, Esq. (toddschwartz@paulhastings.com, willfarmer@paulhastings.com);

(ii)   If to the DIP Lender:

c/o Legalist, Inc. (dip@legalist.com).

**Section 11.03 DIP Lender Expenses.** Whether or not the transactions contemplated hereby are consummated or any DIP Loan is made, the Debtor agrees to pay no later than the Maturity Date all costs and expenses of the DIP Lender incurred in connection with, arising from, or relating to the Debtor or its Case, the DIP Loan Documents, and any exercise of rights or remedies thereunder, whether before or after the date hereof and irrespective of the occurrence of any default or Event of Default, including all fees, expenses, and disbursements of outside counsel or other advisers and consultants retained by the DIP Lender with respect thereto (collectively, the "**DIP Lender Expenses**"), which shall constitute DIP Obligations for all purposes hereunder; provided that the DIP Lender Expenses shall not exceed $15,000.00 prior to the occurrence of an Event of Default. The foregoing shall be in addition to, and shall not limit, any other provision of the DIP Loan Documents regarding DIP Obligations to be paid by the Debtor.

**Section 11.04 Enforceability; Successors and Assigns.** This Agreement shall be binding on and inure to the benefit of, and shall be enforceable by, the respective successors and permitted assigns of the Parties. No Debtor may assign any DIP Loan Document without the DIP Lender's prior written consent. Any such alleged assignment shall be void *ab initio* and shall not relieve the Debtor of any obligation thereunder.

**Section 11.05 Integration.** The DIP Loan Documents contain and constitute the entire agreement of the Parties with respect to the subject matter thereof and supersede all prior negotiations, agreements, and understandings, whether written or oral.

**Section 11.06 No Waiver; Remedies Cumulative.** No failure or delay by the DIP Lender in exercising any right, power, or privilege hereunder shall operate as a waiver thereof. A single or partial exercise of any right, power, or privilege shall not preclude any other or further exercise of the same or another right, power, or privilege. The rights and remedies provided in the DIP Loan Documents shall be cumulative and not exclusive of any right or remedy provided by law or equity or otherwise available.

**Section 11.07 Submission to Jurisdiction.** Each Party agrees that any action with respect to any DIP Loan Document shall be brought exclusively in the Bankruptcy Court and unconditionally submits to the Bankruptcy Court's jurisdiction regarding the same.

**Section 11.08 Governing Law.** The DIP Loan Documents, and any dispute arising therefrom, shall be governed by the Bankruptcy Code and, to the extend not preempted thereby, New York state law. This Agreement constitutes an instrument for the payment of money only, within the meaning of N.Y. C.P.L.R. § 3213. Any reference herein to the "**Uniform Commercial Code**" refers to the New York Uniform Commercial Code as in effect from time to time.

**Section 11.09 WAIVER OF JURY TRIAL.** EACH PARTY HERETO IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO TRIAL BY JURY IN ANY DISPUTE ARISING FROM THIS AGREEMENT.

**Section 11.10 Severability.** If any term of any DIP Loan Document is held invalid, illegal, or incapable of being enforced by any rule of law or public policy, all terms of such DIP Loan Document shall remain in full force and effect so long as the economic or legal substance of the transactions contemplated thereby is not affected in any manner adverse to any party thereto. Upon such holding, the Parties shall negotiate in good faith to modify the same such that the transactions contemplated thereby are fulfilled to the maximum extent possible.

**Section 11.11 Survival.** All representations, warranties, covenants, and agreements made by the Debtor in any DIP Loan Document shall survive until full and indefeasible payment of all DIP Obligations, irrespective of any earlier default, Event of Default, acceleration, or termination thereunder; provided that Article VII and Section 11.3 shall survive such full and indefeasible payment of all DIP Obligations.

**Section 11.12 Maximum Lawful Interest.** Notwithstanding anything to the contrary herein, in no event shall the amount of interest and other charges for the use of money payable under this Agreement exceed the maximum amounts permissible under any law that a court of competent jurisdiction shall, in a final and non-appealable order, deem applicable. The Debtor and the DIP Lender, in executing and delivering this Agreement, intend legally to agree on the rate or rates of interest and other charges for the use of money and manner of payment permitted by such law; provided that, if such amount exceeds such maximum allowable amount, then the Debtor is and shall be liable only for the payment of such maximum as allowed by law, and payment received from the Debtor in excess of such legal maximum shall be applied to reduce the principal balance of the DIP Loans to the extent of any such excess.

**Section 11.13 <u>Foreseeable Circumstances</u>**. The Parties acknowledge that (x) the COVID-19 pandemic any/or other instances of pandemic or widespread virus or infection and (y) ongoing riots, insurrections, terrorist acts, and/or other domestic unrest and uncertainty shall not be considered unforeseeable circumstances for purposes of this Agreement. The Parties agree that any claim of unenforceability, force majeure, or other claim and/or defense related to the foregoing (including with respect to any court closure) is expressly waived.

**Section 11.14 <u>Execution in Counterparts</u>.** Each DIP Loan Document may be executed, including electronically, in any number of counterparts and by different Parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same DIP Loan Document.

*      *      *

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their respective authorized signatories as of the date first written above.

**DEBTOR:**

SVXR Inc.

By: _Daniel P. Trepanier_

Name: Dan Trepanier
Title: Chief Executive Officer

**DIP LENDER:**

LEGALIST DIP GP, LLC, as general partner of the investment fund(s) listed on Addendum 1

By: _____

Name: Christian G.B. Haigh
Title: Managing Member

**Section 11.13 <u>Foreseeable Circumstances</u>**. The Parties acknowledge that (x) the COVID-19 pandemic any/or other instances of pandemic or widespread virus or infection and (y) ongoing riots, insurrections, terrorist acts, and/or other domestic unrest and uncertainty shall not be considered unforeseeable circumstances for purposes of this Agreement. The Parties agree that any claim of unenforceability, force majeure, or other claim and/or defense related to the foregoing (including with respect to any court closure) is expressly waived.

**Section 11.14 <u>Execution in Counterparts.</u>** Each DIP Loan Document may be executed, including electronically, in any number of counterparts and by different Parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same DIP Loan Document.

*        *        *

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their respective authorized signatories as of the date first written above.

**DEBTOR:**

SVXR Inc.

By: _____
Name: Dan Trepanier
Title: Chief Executive Officer

**DIP LENDER:**

LEGALIST DIP GP, LLC, as general partner of the investment fund(s) listed on Addendum 1

By: _____ *Christian G.B. Haigh* _____
Name: Christian G.B. Haigh
Title: Managing Member

**Schedule 1**

**[Omitted]**

**Schedule 2**

**(Existing Liens)**

1. The United States Small Business Administration (the "<u>SBA</u>") holds liens on and a security interest in substantially all of the Company's assets in consideration for the extension of $500,000 in secured credit pursuant to that certain Note, with loan amount of $500,000, dated as of April 1, 2020, by and between the Company and the SBA, entered into under that certain U.S. Small Business Administration program for Economic Injury Disaster Loans (Loan Number EIDL 4323397009); and U.S. Small Business Administration Security Agreement, dated as of April 1, 2020, by and between the Company and the SBA (the "**EIDL Loan**").

2. Certain holders of secured notes hold liens on and a security interest in substantially all of the Company's assets in consideration for entry into that certain Secured Note Purchase Agreement, dated as of November 19, 2020, by and among the Company and the purchasers of the Secured Notes (as defined therein) in an aggregate principal amount of up to $6,000,000; <u>Secured Promissory Notes</u>, issued on various dates, by and between the Company and the Holders (as defined therein) listed by name, and outstanding principal amount of secured note; <u>Security Agreement</u>, dated as of November 19, 2020, by and between the Company and the Secured Parties (as defined therein) ("**Secured Note Purchase Agreement**"), granting Secured Parties a continuing second Lien on and security interest in substantially all of the Company's assets.

3. COMET Technologies USA Inc. ("<u>Comet</u>") holds a "precautionary" lien on certain equipment that the Company leases from Comet. Comet's UCC Financing Statement provides that the lien is precautionary and was submitted in the event that the parties' lease would be found to be a transaction creating a security interest. As of the Effective Date, the Company is not aware of any alleged amount outstanding it owes to Comet, and the equipment lease between the Company and Comet does not create any security interest in the equipment. The Company is not in arrears on any lease payments to Comet (the "**Comet Precautionary Lien**").

| **Schedule 3** | **Schedule 4** |
| :---: | :---: |
| **(Permitted Senior Liens)** | **(Excluded Collateral)** |
| None. | None. |

DocuSign Envelope ID: 97549F1A-7256-4954-BB41-105F805CBA86

**Exhibit A**
**(Form of Borrowing Request)**

Legalist DIP Fund I, LP
c/o  Legalist, Inc. (dip@legalist.com)

RE: *In re SVXR Inc.*, Case No. 21-_____

Ladies and Gentlemen:

This Borrowing Request is delivered to you pursuant to Article III of the Debtor-in-Possession Term Loan Credit Agreement, dated as of August 5, 2021 (as in effect from time to time, the "Credit Agreement"), among SVXR Inc. (the "Debtor") and the addressee(s) hereof (the "DIP Lender"). The Debtor acknowledges that this Borrowing Request is a DIP Loan Document for all purposes. Capitalized term used but not defined herein have the meanings given to them in the Credit Agreement

The Borrower hereby requests that a DIP Loan be made to it in the aggregate principal amount of $_____ (the "DIP Draw").

The Debtor hereby acknowledges that, pursuant to Credit Agreement Section 3.01(iv), each of the representations and warranties set forth in the Credit Agreement and in each other DIP Loan Document shall be true and correct as of the date hereof, except to the extent that any such representation or warranty expressly relates to an earlier date, in which case each such representation and/or warranty shall have been true and correct as of such earlier date. The Debtor agrees that if, at any time prior to the time the DIP Draw is funded by the DIP Lender, any matter certified to herein by it will not be true and correct in all material respects at such time as if then made, it will immediately so notify the DIP Lender.

Please wire transfer the proceeds of the DIP Draw as follows:

Name: _____
ABA No.: _____
Account No.: _____


Very truly yours,

SVXR Inc.

By: _____
Name: Dan Trepanier
Title: Chief Executive Officer

DocuSign Envelope ID: 97549F1A-7256-4954-BB41-105F805CBA86

**Exhibit B**
**(Budget)**

**Addendum 1**
**(Allocation of DIP Commitment)**

- Legalist DIP Fund I, LP: 100%