PAUL HASTINGS LLP
Todd M. Schwartz (Cal. Bar No. 288895)
Will Clark Farmer (Cal. Bar No. 329170)
1117 S. California Avenue
Palo Alto, California 94304
Telephone:     (650) 320-1800
Facsimile:      (650) 320-1900
E mail:         toddschwartz@paulhastings.com
                willfarmer@paulhastings.com

Nathan S. Gimpel (*pro hac vice* admission pending)
Matthew Smart (*pro hac vice* admission pending)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone:     (312) 499-6000
Facsimile:      (312) 499-6100
E mail:         nathangimpel@paulhastings.com
                matthewsmart@paulhastings.com

*Proposed Attorneys for Debtor and*
*Debtor in Possession*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| In re, | Case No. 21-51050 (SLJ) |
| SVXR, INC., a Delaware corporation,[1] | Chapter 11 |
| Debtor. | **DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS, AND (III) GRANTING RELATED RELIEF** |
| | Date:    TBD |
| | Time:    TBD |
| | Judge: Honorable Stephen L. Johnson |
| | United States Bankruptcy Court |
| | 280 South First Street |
| | San Jose, CA 95113 |

---

[1] The last four digits of SVXR, Inc.'s federal tax identification number are (1893). The mailing address for SVXR, Inc. is 90 Bonaventura Drive, San Jose, California 95134.

# **TABLE OF CONTENTS**

**Page**

I. JURISDICTION AND VENUE .......................................................................................... 1

II. BACKGROUND ................................................................................................................ 1

III. SALE PROCESS AND BID PROCEDURES ................................................................... 2

    A. Marketing of Assets ................................................................................................ 2

    B. Bid Procedures ....................................................................................................... 3

IV. BASIS FOR RELIEF ........................................................................................................ 3

    A. The Sale Is Within the Sound Business Judgment of the Debtor and Should Be Approved. ................................................................................................ 3

    B. The Purchaser Should Be Entitled to the Protections of Section 363(m) of the Bankruptcy Code. ........................................................................................ 5

    C. The Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code. ....................................................................................................................... 6

    D. The Assumption and Assignment of Executory Contracts and Unexpired Leases Should Be Authorized. ............................................................................... 7

V. COMPLIANCE WITH THE GUIDELINES ................................................................... 10

VI. WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H) ..................................... 10

VII. NOTICE .......................................................................................................................... 10

SALE MOTION

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 240 North Brand Partners, Ltd.*,
200 B.R. 653 (B.A.P. 9th Cir. 1996)............................................................................4

*In re Abbotts Dairies of Pa., Inc.*,
788 F.2d 143 (3rd Cir. 1986)......................................................................................6

*Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)*,
476 F.3d 665 (9th Cir. 2007)......................................................................................9

*In re Am. Suzuki Motor Corp.*,
494 B.R. 466 (Bankr. C.D. Cal. 2013)........................................................................9

*Bakery, Confectionary & Tobacco Workers Int'l Union v. Kirkpatrick (In re Kirkpatrick)*,
34 B.R. 767 (B.A.P. 9th Cir. 1983)............................................................................8

*In re Bygraph, Inc.*,
56 B.R. 596 (Bankr. S.D.N.Y. 1986).........................................................................10

*In re Channel One Commc'ns, Inc.*,
117 B.R. 493 (Bankr. E.D. Mo. 1990)....................................................................5, 8

*Cinicola v. Scharffenberger*,
248 F.3d 110 (3d Cir. 2001).....................................................................................10

*Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*,
94 B.R. 343 (E.D. Pa. 1988) ......................................................................................7

*In re Congoleum Corp.*,
No. 03-51524, 2007 WL 1428477 (Bankr. D. N.J. May 11, 2007) ............................6

*In re Del. & Hudson Ry. Co.*,
124 B.R. 169 (D. Del. 1991)......................................................................................4

*Durkin v. Benedor Corp. (In re G.I. Indus., Inc.)*,
204 F.3d 1276 (9th Cir., 2000)..................................................................................8

*Ewell v. Diebert (In re Ewell)*,
958 F. 2d 276 (9th Cir. 1992)....................................................................................6

*In re Filtercorp, Inc. v. Gateway Venture Partners III, L.P.*,
163 F.3d 570 (9th Cir. 1998).....................................................................................6

*In re Food Barn Stores, Inc.*,
107 F.3d 558 (8th Cir. 1997)......................................................................................5

- ii -

*In re Idaho Photocopy & Supply, Inc.*,
    No. 94-01756, 1994 WL 553065 (Bankr. D. Idaho Sept. 13, 1994)............................................4

*Integrated Res., Inc.*, 147 B.R. at 659 ............................................................5

*L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.)*,
    209 F.3d 291 (3d Cir. 2000)........................................................8, 10

*In re Lionel Corp.*,
    722 F.2d 1063 (2nd Cir. 1983)........................................................5

*In re Mark Bell Furniture Warehouse, Inc.*,
    992 F.2d 7 (1st Cir. 1993)........................................................6

*Meyers v. Martin (In re Martin)*,
    91 F.3d 389 (3d Cir. 1996)........................................................4

*In re MF Glob. Holdings Ltd.*,
    466 B.R. 239 (Bankr. S.D.N.Y. 2012) ........................................................8, 9

*In re Miller*,
    No. 15-61159-12, 2016 WL 1316763 (Bankr. D. Mont. Apr. 1, 2016)................................8, 9

*Pac. Shores Dev. v. At Home Corp. (In re At Home Corp.)*,
    292 B.R. 195 (N.D. Cal. 2003), *aff'd*, 392 F.3d 1064 (9th Cir. 2004)......................................9

*In re Pisces Leasing Corp.*,
    66 B.R. 671 (E.D.N.Y. 1986)........................................................6

*In re Suchy*,
    786 F.2d 900 (9th Cir. 1985)........................................................6

*In re Tex. Health Enters.*,
    246 B.R. 832 (Bankr. E.D. Tex. 2000) ........................................................10

*In re Tower Air*,
    416 F.3d 229 (3d Cir. 2005)........................................................5

*In re Trans World Airlines, Inc.*,
    No. 01-0056 (PJW), 2001 WL 1820325 (Bankr. D. Del. March 27, 2001)..............................8

*Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor
    Credit Corp.)*,
    75 B.R. 944 (Bankr. N.D. Ohio 1987) ........................................................8

*In re Willemain v. Kivitz*,
    764 F.2d 1019 (4th Cir. 1985)........................................................6

*Winters Nursery v. Color Spot Holdings (In re Color Spot Holdings, Inc.)*,
No. 18-1246, 2018 WL 3996938 (D. Del. Aug. 21, 2018) ......................................................10

**Statutes**

28 U.S.C.
§ 157.............................................................................................................................1
§ 1334...........................................................................................................................1
§ 1408...........................................................................................................................1
§ 1409...........................................................................................................................1

Bankruptcy Code
§ 105.............................................................................................................................1
§ 105(a).........................................................................................................................4
§ 363.........................................................................................................................1, 4
§ 363(b).........................................................................................................................4
§ 363(b)(1)..................................................................................................................4, 5
§ 363(f)........................................................................................................................7, 8
§ 363(m).....................................................................................................................6, 7
§ 365.......................................................................................................................1, 11
§ 365(a).....................................................................................................................8, 9
§ 365(b).......................................................................................................................11
§ 365(b)(1)(C)............................................................................................................10
§ 365(b)(2)..................................................................................................................11
§ 365(f)(1)...................................................................................................................11
§ 365(f)(2)...................................................................................................................10
§ 365(f)(3)...................................................................................................................11
§ 503.............................................................................................................................1
§ 507.............................................................................................................................1
§ 1107(a)......................................................................................................................2
§ 1108...........................................................................................................................2

**Other Authorities**

Bankruptcy Local Rules for the United States District Court for the Northern
District of California R. 5011-1(a)..........................................................................1

Fed. R. Bankr. P.
R. 2002....................................................................................................................1, 11
R. 6004.........................................................................................................................1
R. 6004(a)...................................................................................................................11
R. 6004(h)...................................................................................................................11
R. 7008.........................................................................................................................1
R. 9014.........................................................................................................................1

Case: 21-51050    Doc# 28    Filed: 08/05/21    Entered: 08/05/21 22:08:26    Page 5 of 35

SALE MOTION

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Guidelines for Early Disposition of Assets, Pre-Packaged Plans and the Sale of
Substantially All Assets under § 363* .............................................................................11

*Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*,
General Order 24 (N.D. Cal.) ........................................................................................1

United States Constitution Article III ...............................................................................1

SALE MOTION

The above-captioned debtor and debtor in possession (the "Debtor") seeks entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (i) approving of the sale (the "Sale") of substantially all assets of the Debtor (the "Purchased Assets") to Bruker Nano, Inc., or its designee ("Bruker"), or to a winning overbidder, if any, (Bruker or such winning bidder, the "Purchaser") free and clear of any and all liens, claims, and interests, (ii) approving the assumption and assignments of certain executory contracts and unexpired leases (the "Assumed Contracts"), listed on Exhibit 1 to the Order, in connection therewith, and (iii) granting related relief.  The Debtor respectfully states as follows in support of this motion:

## I. JURISDICTION AND VENUE

The United States Bankruptcy Court for the Northern District of California (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "Local Rules").  The Debtor confirms its consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

The bases for the relief requested herein are sections 105, 363, 365, 503, and 507 of the title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rules 2002, 6004, and 9014.

## II. BACKGROUND

Founded in 2013, the Debtor is a developer and manufacturer of high-resolution, automated x-ray inspection and metrology equipment for businesses in the semiconductor and advanced electronics market.  The Debtor also provides data analytics software and field support services to its customers in the semiconductor fabrication industry.

SALE MOTION

On August 4, 2021, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the Debtor and its business, and the facts and circumstances supporting the Debtor's chapter 11 case, are set forth in greater detail in the *Declaration of Daniel Trepanier in Support of First Day Motions and Related Relief* (the "First Day Declaration").[2] The Debtor continues to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appoint in this chapter 11 case. Additionally, as of the date hereof, the Office of the United States Trustee for the Northern District of California (the "U.S. Trustee") has not appointed an official committee of unsecured creditors (the "Committee").

## III. SALE PROCESS AND BID PROCEDURES

### A. Marketing of Assets

In September 2020, the Debtor, with its investment banker, Greenhill & Co., LLC ("Greenhill"), began a robust marketing process to identify strategic transactions to maximize the value of the Debtor's business. Despite some early interest from third parties regarding a potential sale transaction, the Debtor's initial marketing efforts did not result in the consummation of a sale transaction. In the winter of 2021, following the departure of the Debtor's former CEO, the Debtor once again undertook an effort to market and sell its business. In February 2021, the Debtor, with the assistance of Greenhill, renewed its efforts to identify a value maximizing transaction for the Debtor's stakeholders. During February and March 2021, the Debtor actively marketed its technology and products to strategic partners and interested purchasers in connection with its ongoing effort to realize a sale. Once again, the Debtor's marketing efforts did not result in the consummation of a sale transaction.

In early June 2021, the Debtor, with the assistance of Greenhill, once more undertook a robust and competitive marketing process to identify and engage with partners, strategic buyers, and investors that might be interested in a refinancing, recapitalization, or acquisition of the Debtor. Although the marketing process did not provide the level of interest—or valuation of the Debtor's assets—that existed in September and October 2020, the Debtor was able to reach an agreement

---

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the First Day Declaration.

Case: 21-51050   Doc# 28   Filed: 08/05/21   Entered: 08/05/21 22:08:26   Page 8 of 35

with Bruker to serve as the stalking horse bidder the Debtor's chapter 11 sale process. After over eleven months and three separate rounds of marketing the Debtor's assets to interested investors and acquirers, the Debtor seeks Court approval of the Sale of the Purchased Assets to the Purchaser—whether that be Bruker under the terms of the stalking horse asset purchase agreement (the "Stalking Horse APA") or to a third-party that steps forward, submits a qualified bid, and is ultimately the winning bidder at the Debtor's auction.

### B. Bid Procedures

Concurrently with the filing of this motion, the Debtor filed a motion seeking the Court's approval of bid procedures (the "Bid Procedures") in connection with the Sale (the "Bid Procedures Motion"). The Bid Procedures provide that if the Debtor receives one or more qualified bids, an auction will be held. As of the date of filing this motion, the Bid Procedures have not yet been approved by the Court, and the Bid Procedures motion is subject to the Court's consideration. The Bid Procedures Motion also includes a summary of Stalking Horse APA, which provides the baseline bid for any future overbids. Subject to the receipt of a qualified and timely overbid, as provided for in the Bid Procedures, the Debtor believes the proposed Sale to the Purchaser is in the best interest of creditors. Upon the completion of the Debtor's sale process, the market will have spoken and the resulting Sale will allow the Debtor to maximize the value of its assets for the benefit of its creditors and all parties in interest.

### IV. BASIS FOR RELIEF

### A. The Sale Is Within the Sound Business Judgment of the Debtor and Should Be Approved.

Section 363(b)(1) of the Bankruptcy Code provides that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, bankruptcy courts routinely authorize sales of a debtor's assets if such sale is based upon the sound

business judgment of the debtor. *In re 240 North Brand Partners, Ltd.*, 200 B.R. 653, 659 (9th Cir. BAP 1996) ("[D]ebtors who wish to utilize § 363(b) to dispose of property of the estate must demonstrate that such disposition has a valid business justification."); *see Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996).

Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was given to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith. *See In re Idaho Photocopy & Supply, Inc.*, No. 94-01756, 1994 WL 553065 (Bankr. D. Idaho Sept. 13, 1994); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 76 (D. Del. 1991). In *In re Del. & Hudson Ry.*, the court further held that:

> [o]nce a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale, the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the [proposed] Buyer is proceeding in good faith.

124 B.R. at 176.

The business judgment rule shields a debtor's management from judicial second-guessing. *See In re Tower Air*, 416 F.3d 229, 238 (3d Cir. 2005). Once a debtor articulates a valid business justification, "[t]he business judgment rule is a presumption that directors act in good faith, on an informed basis, honestly believing that their action is in the best interests of the company." *Id.* Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

A sound business purpose for the sale of a debtor's assets outside the ordinary course of business may be found where such a sale is necessary to preserve the value of assets for the estate, its creditors, or interest holders. *See, e.g.*, *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2nd Cir. 1983). In fact, the paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See In re Food Barn Stores, Inc.*, 107 F.3d 558, 564–65 (8th Cir. 1997) (noting that in bankruptcy sales, "a primary objective of the [Bankruptcy] Code [is] to

enhance the value of the estate at hand"); *Integrated Res., Inc.*, 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the . . . [Debtor's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."); *In re Channel One Commc'ns, Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) (approving a sale of substantially all a debtor's assets where "the Debtor's business will likely not generate sufficient revenue to permit the radio station to continue to operate").

Here, the Debtor submits that the decision to proceed with the Sale of the Purchased Assets is based upon its sound business judgment and should be approved. The Debtor's plan from day one has been to effectuate a going-concern sale. The Debtor is preforming a robust marketing and sale process that straddles the Petition Date to ensure that the Debtor receives the highest or otherwise best price for the Purchased Assets. If any additional interested parties come forward, the process will culminate in an auction for the Purchased Assets. The notice procedures, as set forth in the Bidding Procedures Motion, are designed to provide adequate notice to all potentially interested parties, including those who may be interested in the Assets but are otherwise unknown to the Debtor. The Debtor therefore believes that reasonable and adequate notice of the Sale is being provided to interested persons. Accordingly, the Debtor respectfully submits that consummation of the Sale of the Purchased Assets to the Purchaser is a sound exercise of its business judgment and is in the best interests of the Debtor's estate and stakeholders.

**B.** **The Purchaser Should Be Entitled to the Protections of Section 363(m) of the Bankruptcy Code.**

Pursuant to Bankruptcy Code section 363(m), a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *Ewell v. Diebert (In re Ewell)*, 958 F. 2d 276, 281 (9th Cir. 1992); *see In re Filtercorp, Inc. v. Gateway Venture Partners III, L.P.*, 163 F.3d 570, 577 (9th Cir. 1998); s*ee also*, *In re Mark Bell Furniture Warehouse, Inc*., 992 F.2d 7, 8 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Congoleum Corp.*, No. 03-51524, 2007 WL 1428477, *2 (Bankr. D. N.J. May 11, 2007); *Abbotts Dairies of Pa.*, 788 F.2d 143, 147 (3d Cir. 1986). To constitute lack of good faith, a party's conduct in connection with the Sale must amount to "fraud, collusion between the purchaser and other bidders

or the trustee or an attempt to take grossly unfair advantage of other bidders." *In re Suchy*, 786 F.2d 900, 902 (9th Cir. 1985). Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the Sale proceedings." *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (internal quotations omitted).

As required by section 363(m) of the Bankruptcy Code, any agreement consummating a Sale will be negotiated at arm's length by sophisticated parties, each represented by their own advisors. Accordingly, the Debtor requests that the Sale Order include a provision that the Purchaser of the Assets is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code.

**C.     The Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code.**

The Debtor further submits that it is appropriate to sell the Assets free and clear of any liens, claims, or interests in such property pursuant to section 363(f) of the Bankruptcy Code, with any such liens attaching to the net sale proceeds of the Assets to the same extent and with the same priority as such liens held against the Assets immediately prior to the Sale. Under Section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell all or any part of its property free and clear of any and all liens, claims or interests in such property if: (i) such a sale is permitted under applicable non-bankruptcy law; (ii) the party asserting such a lien, claim or interest consents to such sale; (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (iv) the interest is the subject of a *bona fide* dispute; or (v) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.

Section 363(f) of the Bankruptcy Code is drafted in the disjunctive, therefore, satisfaction of any one of its five requirements will suffice to permit the sale of the Assets "free and clear" of liens. *See Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that Section 363(f) of the Bankruptcy Code is written in the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the subsections is met).

The Debtor believes that one or more of the tests of section 363(f) of the Bankruptcy Code are satisfied with respect to the transfer of the Assets. First, following the Sale any valid liens, claims, or interests in the Assets will attach to the net sale proceeds of the Assets to the same extent and with the same priority as such liens held against the Assets immediately prior to the Sale. Second, to the extent the Debtor finds that any party may hold a lien on all, or a portion of, the Assets, the Debtor will provide such party with notice of, and an opportunity to object to, the Sale. Absent objection, each such party will be deemed to have consented to the sale of the Assets. *See In re Channel One Comm., Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo 1990). Furthermore, courts have held that they have the equitable power to authorize sales free and clear of interests that are not specifically covered by Section 363(f). *See, e.g.*, *In re Trans World Airlines, Inc.*, No. 01-0056 (PJW), 2001 WL 1820325 at *3, 6 (Bankr. D. Del. March 27, 2001); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).

### D. The Assumption and Assignment of Executory Contracts and Unexpired Leases Should Be Authorized.

Section 365(a) permits a debtor to assume or reject an executory contract or unexpired lease upon the authority of the Court after notice and a hearing. Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." Section 365(a) of the Bankruptcy Code "enables the trustee to maximize the value of the debtor's estate by assuming executory contracts and unexpired leases that benefit the estate and rejecting those that do not." *L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.)*, 209 F.3d 291, 298 (3d Cir. 2000). Courts generally "approve motions to assume, assume and assign, or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment." *In re MF Glob. Holdings Ltd.*, 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012); *see also Durkin v. Benedor Corp. (In re G.I. Indus., Inc.)*, 204 F.3d 1276, 1282 (9th Cir., 2000); *In re Miller*, No. 15-61159-12, 2016 WL 1316763, at *4 (Bankr. D. Mont. Apr. 1, 2016).

The "business judgment" standard is not a strict standard; it requires only a showing that either assumption or rejection of the executory contract will benefit the debtor's estate. *See Bakery, Confectionary & Tobacco Workers Int'l Union v. Kirkpatrick (In re Kirkpatrick)*, 34 B.R. 767, 769 (B.A.P. 9th Cir. 1983); *Pac. Shores Dev. v. At Home Corp. (In re At Home Corp.)*, 292 B.R. 195, 199 (N.D. Cal. 2003), *aff'd*, 392 F.3d 1064 (9th Cir. 2004) ("Bankruptcy courts generally approve rejection if the debtor demonstrates that the rejection will benefit the estate under a 'business judgment' test."); *In re Am. Suzuki Motor Corp.*, 494 B.R. 466, 475 n.4 (Bankr. C.D. Cal. 2013). Furthermore, "[c]ourts generally will not second-guess a debtor's business judgment concerning whether the assumption or rejection of an executory contract or unexpired lease would benefit the debtor's estate." *MF Glob. Holdings*, 466 B.R. at 242; *Miller*, 2016 WL 1316763, at *4 ("Although the business judgment is the proper standard for determining whether to permit assumption or rejection of an executory contract or unexpired lease, the court should focus on the business judgment of the trustee or debtor in possession, not on its own business judgment."). The Court should "presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)*, 476 F.3d 665, 670 (9th Cir. 2007) (in the context of a motion to reject under section 365(a)). Only a decision which is "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice" falls foul of the rule. *Id.*

The Debtor respectfully submits that its decision to assume and assign the Assumed Contracts as part of the Sale satisfies the business judgment standard. Also, the Debtor submits that prior to any assumption of an Assigned Contract, the Debtor and/or the Purchaser will cure any amounts necessary to assume the Assigned Contract. Indeed, as required by the Bankruptcy Code, the Debtor's assumption and assignment of the Assigned Contracts will be contingent upon payment or reserve of Cure Costs in connection with the Sale.

Once an executory contract is assumed, the Bankruptcy Code provides that the Debtor may elect to assign such contract. *See Rickel Home Center*, 209 F.3d at 299 ("The Code generally favors free assignability as a means to maximize the value of the debtor's estate."). Pursuant to section

SALE MOTION

365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided." Adequate assurance is not defined in the Bankruptcy Code, and "the required assurance will fall considerably short of an absolute guarantee of performance." *Cinicola v. Scharffenberger*, 248 F.3d 110, 120 n.10 (3d Cir. 2001) (holding that there is no single solution for adequate assurance in every case); *Winters Nursery v. Color Spot Holdings (In re Color Spot Holdings, Inc.)*, No. 18-1246, 2018 WL 3996938, at *8 (D. Del. Aug. 21, 2018) (stating that "[c]ourts determine what constitutes adequate assurance of future performance on a case-by-case basis" (internal citation omitted)). Adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See In re Bygraph, Inc.*, 56 B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986) (holding that adequate assurance of further performance is given where assignee of lease has financial resources and expresses willingness to devote sufficient funding to the business to ensure its success); *In re Tex. Health Enters.*, 246 B.R. 832, 835 (Bankr. E.D. Tex. 2000) ("Assurance of future performance is adequate if performance is likely (i.e. more probably than not)" (internal quotations omitted)).

To the extent necessary, the Debtor will present facts at the Sale Hearing showing the financial credibility, willingness, and ability of the Purchaser to perform under the Assigned Contracts. The Sale Hearing will afford the Court and other interested parties the opportunity to evaluate the ability of the Purchaser to provide adequate assurance of future performance under the Assigned Contracts, as required under Bankruptcy Code section 365(b)(1)(C). Further, as set forth in the Bidding Procedures Motion, the Debtor will give notice to all Contract Counterparties, which notice will include the amounts the Debtor believes are necessary to cure any defaults in accordance with section 365(b) of the Bankruptcy Code.

Accordingly, the Debtor requests approval under Bankruptcy Code section 365 of the Debtor's assumption and assignment of the Assigned Contracts in connection with the Sale. The Debtor further requests that the Sale Order provide that the Assigned Contracts will be transferred to, and remain in full force and effect for the benefit of, the Purchaser notwithstanding any

SALE MOTION

provisions in the Assigned Contracts, including those described in Bankruptcy Code sections 365(b)(2) and (f)(1) and (f)(3) that prohibit such assignment.

## V.     COMPLIANCE WITH THE GUIDELINES

The Debtor believes that this motion, together with the attachments hereto, the Bidding Procedures Motion, and any subsequently filed declarations in support of the Sale substantially complies with the Court's *Guidelines for Early Disposition of Assets, Pre-Packaged Plans and the Sale of Substantially All Assets under § 363*.  To the extent that the Debtor does not comply in every respect with such requirements, the Debtor respectfully requests a waiver for any such non-compliance for the reasons set forth herein.

## VI.     WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## VII.     NOTICE

The Debtor will provide notice of this motion to:  (a) the U.S. Trustee; (b) the holders of the 30 largest unsecured claims against the Debtor; (c) counsel to the Noteholders; (d) the DIP Lender; (e) counsel to the Bruker; (f) any party potentially holding a lien on any of the Purchased Assets; (g) all parties listed on the Debtor's creditor matrix; and (h) any party that requests service pursuant to Bankruptcy Rule 2002.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

SALE MOTION

1        WHEREFORE the Debtor respectfully requests entry of an order, substantially in the form

2   attached hereto as **Exhibit A**, granting the relief requested and providing such other and further

3   relief as is just and proper.

4   Dated: August 5, 2021

5                     PAUL HASTINGS LLP

6

7                By     */s/ Todd Schwartz*
                              TODD SCHWARTZ

8                         *Proposed Attorneys for Debtor and*
                                *Debtor in Possession*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Exhibit A**

2

**Proposed Sale Order**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SALE MOTION

1   PAUL HASTINGS LLP
    Todd M. Schwartz (Cal. Bar No. 288895)
2   Will Clark Farmer (Cal. Bar No. 329170)
    1117 S. California Avenue,
3   Palo Alto, California 94304
    Telephone:    (650) 320-1800
4   Facsimile:    (650) 320-1900
    E mail:       toddschwartz@paulhastings.com
5                 willfarmer@paulhastings.com

6   Nathan S. Gimpel (*pro hac vice* admission pending)
    Matthew Smart (*pro hac vice* admission pending)
7   71 South Wacker Drive, Suite 4500
    Chicago, Illinois 60606
8   Telephone:    (312) 499-6000
    Facsimile:    (312) 499-6100
9   E mail:       nathangimpel@paulhastings.com
                  matthewsmart@paulhastings.com
10
    *Proposed Attorneys for Debtor and*
11  *Debtor in Possession*

12              UNITED STATES BANKRUPTCY COURT

13      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

14
    In re,                                    Case No. 21-51050 (SLJ)
15
    SVXR, INC., a Delaware corporation,[1]    Chapter 11
16
                    Debtor.                   **ORDER (I) AUTHORIZING THE SALE**
17                                            **OF SUBSTANTIALLY ALL OF THE**
                                              **DEBTOR'S ASSETS FREE AND CLEAR**
18                                            **OF ALL LIENS, (II) APPROVING THE**
                                              **ASSUMPTION AND ASSIGNMENT OF**
19                                            **EXECUTORY CONTRACTS AND**
                                              **UNEXPIRED LEASES, AND**
20                                            **(III) GRANTING RELATED RELIEF**

21

22

23

24

25

26

27
    _____
28  [1]   The last four digits of SVXR, Inc.'s federal tax identification number are (1893).  The mailing address for
          SVXR, Inc. is 90 Bonaventura Drive, San Jose, California 95134.

SALE MOTION
EXHIBIT A – PROPOSED ORDER

Upon the Motion (the "Motion"),[2] of the above-captioned debtor and debtor in possession (the "Debtor") for entry of an order (this "Order"), pursuant to sections 105(a), 363, 365 and 554 of title 11 of the United State Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 6004-1 and 6006-1 of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "Local Rules"), (i) authorizing the sale of substantially all of the Debtor's assets (the "Purchased Assets") to Bruker Nano, Inc., or its designee ("Bruker"), or to a winning bidder, if any, (Bruker or such other winning bidder, the "Purchaser") free and clear of all liens, claims, encumbrances, and other interests, (ii) approving the assumption and assignment of certain executory contracts and unexpired leases (the "Assumed Agreements") as set forth on **Exhibit 1** attached hereto, and (iii) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Local Rule 5011-1(a); and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard any statements in support of the relief requested therein at any hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the Stalking Horse APA, as applicable.

Case: 21-51050    Doc# 28    Filed: 08/05/21    Entered: 08/05/21 22:08:26    Page 20 of 35

proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:[3]

1.    The Motion is granted as set forth herein.

2.    Pursuant to sections 105 and 363 of the Bankruptcy Code and the terms of the Stalking Horse APA, the Debtor is hereby authorized to sell, transfer, and convey the Purchased Assets to the Purchaser.

3.    Except as provided to the contrary herein, all objections to the Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, are overruled and denied on the merits with prejudice.

**Approval of the Stalking Horse APA**

4.    The Stalking Horse APA, all of the terms and conditions thereof, and the Sale contemplated therein are approved in all respects. The failure specifically to reference any particular provision of the Stalking Horse APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Stalking Horse APA be authorized and approved in its entirety and incorporated herein by reference. The transfer of the Purchased Assets by the Debtor to the Purchaser shall be a legal, valid, and effective transfer of the Purchased Assets. The consummation of the Sale is hereby approved and authorized under section 363(b) of the Bankruptcy Code. The automatic stay pursuant to section 362 of the Bankruptcy Code, to the extent applicable, is hereby modified to allow the Purchaser to enforce its rights, including any rights to specific performance, pursuant to the Stalking Horse APA.

5.    The Debtor and the Purchaser, as well as their officers, employees, and agents, shall be, and hereby are, authorized (a) to take any and all actions necessary or appropriate to perform, consummate, implement, and close the Sale, including the sale to the Purchaser of all Purchased Assets, in accordance with the terms and conditions set forth in the Stalking Horse APA and this Order, including, without limitation, executing, acknowledging, and delivering such deeds, assignments, conveyances, and other assurance, documents, and instruments of transfer and taking

---

[3]    All findings of fact and conclusions of law announced by the Court at the Hearing in relation to the Motion are incorporated herein to the extent not inconsistent with this Order.

any action for purposes of assigning, transferring, granting, conveying, and confirming to the Purchaser, or reducing to possession, any or all of the Purchased Assets, and entering into any other agreements related to implementing the Sale, and (b) to assume and assign any and all Assumed Agreements to the Purchaser in accordance with the terms and conditions set forth in the Stalking Horse APA and this Order.

6.      The Debtor is authorized to pay, without further order of this Court, whether before, at or after the Closing, any expenses or costs that are required to be paid in order to consummate the Sale or perform their obligations under the Stalking Horse APA.

7.      All persons and entities are prohibited from taking any action to adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtor to transfer the Purchased Assets to the Purchaser in accordance with the Stalking Horse APA and this Order.

## **Sale and Transfer Free and Clear of all Liens, Claims and/or Interests**

8.      Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, upon Closing, and in accordance with the Stalking Horse APA, the Debtor is authorized to transfer the Purchased Assets to the Purchaser free and clear to the fullest extent permitted by section 363 of the Bankruptcy Code ("Free and Clear") of all liens, claims, encumbrances and interests (subject to and other than with respect to the Permitted Exceptions and Assumed Liabilities; *provided*, *however*, that the Purchased Assets shall not include any Excluded Assets), including, without limitation, each of the following, which are collectively referred to herein as the "Liens, Claims and/or Interests":

a.      liens (as that term is defined in the Bankruptcy Code), including, without limitation, any lien, encumbrance, pledge, mortgage, deed of trust, security interest, charge, or encumbrance, and liens and security interests granted under sections 361, 363 and/or 364 of the Bankruptcy Code or an order of the Court, including, among others, those granted pursuant to the

- 4 -

Case: 21-51050    Doc# 28    Filed: 08/05/21    Entered: 08/05/21 22:08:26    Page 22 of
35

DIP Order,[4] and specifically, the liens held by, or allegedly held by, the U.S. Small Business Administration, Comet Technologies USA Inc., and the Noteholders[5];

      b.    interests, dedications, obligations, liabilities, demands, agreements, guaranties, options, restrictions, contractual or other commitments;

      c.    rights, including, without limitation, rights of first refusal, rights of offset, rights to use, contract rights, preferential rights to purchase, rights of recovery, and any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, consent, or termination of the Debtor's or the Purchaser's interest in any of the Assets, or any similar rights, in each case with respect to the Sale;

      d.    judgments and/or decrees of any court or foreign or domestic Governmental Body (as defined in the Stalking Horse APA) or governmental entity (to the extent permitted by law);

      e.    charges or restrictions of any kind or nature, including, without limitation, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership of any of the Assets, including, without limitation, consent of any person or entity to assign or transfer any of the Assets, in each case with respect to the Sale;

      f.    debts (as that term is defined in the Bankruptcy Code), including but not limited to, debts arising in any way in connection with any agreements, loan documents, credit agreements, indentures, debtor-in-possession loans, DIP Documents (as defined in the DIP Order), acts, or failures to act of the Debtor, any of the Debtor's predecessors or affiliates, or any representative of the Debtor, its predecessors or affiliates;

---

[4] The "DIP Order" means the *Interim Order: (I) Authorizing the Debtor to (A) Obtain Senior Secured, Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(C), 363(E), 364(C), 364(D)(1) and 364(E) and (B) Utilize Cash Collateral of Pre-Petition Secured Parties; (II) Granting Liens And Superpriority Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(B) and 4001(C); and (V) Granting Related Relief* [Docket No. __] and the *Final Order: (I) Authorizing the Debtor to (A) Obtain Senior Secured, Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(C), 363(E), 364(C), 364(D)(1) and 364(E) and (B) Utilize Cash Collateral of Pre-Petition Secured Parties; (II) Granting Liens And Superpriority Claims; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Docket No. __].

[5] The Noteholders include: (i) The Levy Family Trust dated February 18, 1983; (ii) Grand Process Technology Corporation; (iii) ASE Test Limited; (iv) David Adler; (v) Michael Wu; (vi) Scott Jewler; (vii) Maureen Lamb; (viii) The McWhirter Living Trust; (ix) The Franklin/Malnekoff Trust, Gregg E. Franklin, and Mara B. Malnekoff, and their successors, as Trustee, under Trust Agreement dated January 12, 2016; (x) Remon Kaldani; (xi) Sunil Kaul; and (xii) Robert Maire.

- 5 -

g.     Claims (as defined in the Stalking Horse APA), including but not limited to, all rights to payment, damages, losses, demands, judgments, claims, causes of action, charges, assessments, liabilities, suits, investigations, litigation, third-party actions, claims for reimbursement, contribution claims, penalties, indemnity claims, exoneration or exculpation claims, royalties, suspense funds, alter-ego claims, environmental claims or liens arising from conditions first existing on or prior to the Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or waste) that may be asserted on any basis, including, without limitation, under any environmental law (to the greatest extent permitted by law), claims arising under any bulk sales or similar law, tax, claims arising under any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, any products liability, product warranty liability or similar claims, intercompany claims, loans and receivables between the Debtor and any non-Debtor subsidiary, affiliate or representative of any of the foregoing, escheat, administrative expenses, and pending or threatened litigation claims, arbitral proceedings or proceedings by or before any governmental authority or any other person, sanctions, penalties, costs, expenses, fees (including attorney or other professional and advisor fees and costs), Liabilities, setoff rights (to the greatest extent permitted by law), obligations, and claims and liabilities of any kind or nature under contract, agreement, understanding, or at law, in equity, or otherwise, whatsoever, whether or not reduced to judgment;

h.     claims or liens in any way whatsoever relating to or arising from any of the Purchased Assets or the Debtor's operations or use of any of the Purchased Assets, including, without limitation, claims or liens under the Assumed Agreements arising prior to the Closing, or any liabilities calculable by reference to the Debtor or any of its assets or operations or relating to continuing conditions existing at or prior to the Closing or the applicable date of such assumption and assignment, as applicable, which claims or liens, as against the Purchaser (and upon Closing, against the Purchased Assets) are hereby extinguished, without regard to whether the claimant asserting any such claims or liens has delivered to the Purchaser a release thereof; and

i.     to the maximum extent permitted by law, any other interest within the meaning of section 363(f) of the Bankruptcy Code, in each instance for all of the foregoing, whether

- 6 -

known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, disputed or undisputed, whether arising prior to or subsequent to the commencement of this chapter 11 case, and whether imposed by agreement, understanding, law, equity or otherwise.

9.      For the avoidance of doubt, the Liens, Claims and/or Interests on any assets of the Debtor not subject to the Sale to the Purchaser pursuant to the Stalking Horse APA shall remain with the same validity, force, priority, and effect on such other assets.  All Liens, Claims and/or Interests from which the Purchased Assets are sold Free and Clear shall attach to the proceeds of the sale of the Purchased Assets.

10.     At Closing, all of the Debtor's right, title, and interest in and to, and possession of, the Purchased Assets shall be immediately vested in the Purchaser pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code Free and Clear of all Liens, Claims and/or Interests except for Permitted Exceptions and Assumed Liabilities. Such transfer shall constitute a legal, valid, binding, and effective transfer of such Purchased Assets. All persons or entities, presently, or on or after the Closing, in possession of some or all of the Purchased Assets are directed to surrender possession of the Purchased Assets directly to the Purchaser or its designees on the Closing or at such time thereafter as the Purchaser may request. All Liens, Claims, and/or Interests of record against the Purchased Assets, other than Permitted Exceptions and Assumed Liabilities, shall, upon Closing, be automatically terminated and expunged as against the Purchased Assets.

11.     This Order: (i) shall be effective as a determination that, to the greatest extent under applicable law, as of the Closing, (a) no Liens, Claims, or Interests (other than Permitted Exceptions and Assumed Liabilities) will be capable of being asserted against the Purchaser or any of its assets (including the Purchased Assets) or the Affiliates (as defined in the Stalking Horse APA) of the Purchaser or any of their assets, (b) the Purchased Assets shall have been transferred to the Purchaser Free and Clear of all Liens, Claims and/or Interests except for Permitted Exceptions and Assumed Liabilities, and (c) the conveyances described herein have been effected; and (ii) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing

- 7 -

agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sales contemplated by the Stalking Horse APA. The Purchased Assets are sold Free and Clear of any reclamation rights, as defined in the Uniform Commercial Code and analogous state law.

12.     Except as otherwise expressly provided in the Stalking Horse APA or this Order solely with respect to the Permitted Exceptions and Assumed Liabilities, and to the greatest extent permitted under applicable law, all persons and entities (and their respective successors and assigns), including, without limitation, all debt security holders, equity security holders, affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants, and other creditors holding Liens, Claims and/or Interests arising under or out of, in connection with, or in any way relating to, the Debtor, the Purchased Assets, the ownership, sale, or operation of the Purchased Assets prior to Closing or the transfer of the Purchased Assets to the Purchaser, are hereby forever barred and estopped from asserting such Liens, Claims and/or Interests against the Purchaser or its property or its Affiliates, designees, assignees, and/or successors or their property, or the Purchased Assets. Following the Closing, no holder of any Liens, Claims and/or Interests shall interfere with the Purchaser's title to or use and enjoyment of the Purchased Assets based on or related to any such Liens, Claims and/or Interests or based on any action the Debtor has taken or may take in this chapter 11 case.

13.     If any person or entity that has filed or recorded financing statements, mortgages, *lis pendens* or other documents or agreements evidencing Liens, Claims and/or Interests against or in the Purchased Assets shall not have delivered to the Debtor prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments

of satisfaction, releases of all Liens, Claims and/or Interests that the person or entity has with respect to the Purchased Assets or otherwise, then only with regard to the Purchased Assets that are purchased by the Purchaser pursuant to the Stalking Horse APA and this Order: (i) the Debtor is hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Purchased Assets; (ii) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims and/or Interests against the Purchaser and the applicable Purchased Assets; and (iii) the Purchaser may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all Liens, Claims and/or Interests with respect to the Purchased Assets other than Permitted Exceptions and Assumed Liabilities. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office. Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Purchased Assets Free and Clear of all Liens, Claims and/or Interests (except as provided in the Stalking Horse APA, solely with respect to Permitted Exceptions and Assumed Liabilities) shall be self-executing, and neither the Debtor nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order.

14. Nothing in this Order or the Stalking Horse APA releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit to which any post-sale owner or operator of property would be subject in such capacity after the date of entry of this Order. Nothing in this Order or the Stalking Horse APA authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

- 9 -

15.     All persons and entities that are in possession of some or all of the Purchased Assets as of the Closing Date are directed to immediately surrender possession of such Purchased Assets to the Purchaser on the Closing Date.

**<u>No Successor Transferee Liability</u>**

16.     To the greatest extent permitted under applicable law, neither the Purchaser nor its affiliates, officers, directors, members, partners, and principals or any of their respective representatives, successors, or assigns, shall be deemed, as a result of any action taken in connection with the Stalking Horse APA, the consummation of the Sale contemplated by the Stalking Horse APA, or the transfer or operation of the Purchased Assets, including the Assumed Agreements, to: (i) be a legal successor, or otherwise be deemed a successor to the Debtor or its estate (other than, for the Purchaser, with respect to the Permitted Exceptions and Assumed Liabilities to be paid after the Closing or any obligations as an assignee under the Assumed Agreements arising after the Closing); (ii) have, *de facto* or otherwise, merged with or into the Debtor; (iii) be an alter ego or a mere continuation or substantial continuation of the Debtor or its estate including, without limitation, within the meaning of any foreign, federal, state, or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the WARN Act (29 U.S.C. §§ 2101 *et seq*.) ("<u>WARN</u>"), the Comprehensive Environmental Response Compensation and Liability Act ("<u>CERCLA</u>"), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act, 29 U.S.C. § 151, *et seq*.; (iv) be liable for any claim based on successor liability, transferee liability, derivative liability, vicarious liability, or any similar theories under any applicable state or federal law, or otherwise.

17.     Other than as expressly set forth in the Stalking Horse APA or this Order solely with respect to Permitted Exceptions and Assumed Liabilities, the Purchaser shall not, to the greatest extent permitted under applicable law, have any responsibility for (i) any liability or other obligation of the Debtor or related to the Purchased Assets or (ii) any remaining Liens, Claims and/or Interests against the Debtor or any of its predecessors or Affiliates. Other than as expressly

- 10 -

set forth in the Stalking Horse APA or this Order solely with respect to Permitted Exceptions and Assumed Liabilities, and to the greatest extent permitted under applicable law, the Purchaser shall have no liability whatsoever with respect to the Debtor's (or its predecessors' or Affiliates') businesses or operations or the Debtor's (or its predecessors' or Affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including, without limitation, (i) liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing, (ii) liabilities or obligations under WARN, or (iii) liabilities or obligations under CERCLA, or any foreign, federal, state, or local labor, employment, or environmental law whether of similar import or otherwise by virtue of the Purchaser's purchase of the Purchased Assets or assumption of the Assumed Liabilities by the Purchaser or an Affiliate of the Purchaser (all liabilities described in Paragraph 18 and Paragraph 19 of this Order, "<u>Successor or Transferee Liability</u>").

18.	Except as otherwise expressly provided in this Order or the Stalking Horse APA, nothing shall require the Purchaser to: (i) continue or maintain in effect, or assume any liability in respect of any employee, collective bargaining agreement, pension, welfare, fringe benefit or any other benefit plan, trust arrangement, or other agreements to which the Debtor is a party or have any responsibility therefor including, without limitation, medical, welfare, and pension benefits payable after retirement or other termination of employment; or (ii) assume any responsibility as a fiduciary, plan sponsor, or otherwise, for making any contribution to or in respect of the funding, investment, or administration of any employee benefit plan, arrangement, or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement, or agreement.

19.	Effective upon the Closing, except with respect to Permitted Exceptions and Assumed Liabilities, and to the greatest extent permitted under applicable law, all persons and entities are forever prohibited from commencing or continuing in any manner any action or other

Case: 21-51050   Doc# 28   Filed: 08/05/21   Entered: 08/05/21 22:08:26   Page 29 of
35

proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Purchaser, or its assets (including the Purchased Assets), or its Affiliates, designees, assignees, and/or successors, or their assets, with respect to any (i) Liens, Claims and/or Interests or (ii) Successor or Transferee Liability, including, without limitation, the following actions with respect to clauses (i) and (ii): (a) commencing or continuing any action or other proceeding pending or threatened; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any Liens, Claims and/or Interests; (d) asserting any setoff (except with respect to setoffs that were effected prior to the Petition Date), right of subrogation, or recoupment of any kind; (e) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof.

20.     To the greatest extent available under applicable law and except as provided in the Stalking Horse APA, the Purchaser, as provided by the Stalking Horse APA, shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtor with respect to the Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date as provided by the Stalking Horse APA. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any grant, permit, or license relating to the operation of the Purchased Assets sold, transferred, assigned, or conveyed to the Purchaser on account of the filing or pendency of this chapter 11 case or the consummation of the Sale.

## **Good Faith of the Purchaser**

21.     The Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code. The Sale contemplated by the Stalking Horse APA is undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale or appeal of the other relief provided for in this Order shall not affect the

- 12 -

Case: 21-51050    Doc# 28    Filed: 08/05/21    Entered: 08/05/21 22:08:26    Page 30 of
35

validity of the Sale or the other relief provided for in this Order (including the assumption and assignment of the Assumed Agreements), whether or not the Purchaser knew or knows of the pendency of the appeal, unless prior to the Closing of this Order, such authorization, such Sale, and the other relief provided for in this Order are duly and properly stayed pending such appeal.

22.     None of the Debtor, the Purchaser, or any Affiliate of either the Debtor or Purchaser has engaged in any collusion with other bidders or other parties or has taken any other action or inaction that would cause or permit the Sale to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code or otherwise. The consideration provided by the Purchaser for the Purchased Assets under the Stalking Horse APA is fair and reasonable and is not less than the value of such Purchased Assets, and the Sale and the other relief provided for in this Order may not be avoided under section 363(n) of the Bankruptcy Code.

23.     The Purchaser is not an "insider" of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code.

## **Assumption and Assignment of Contracts**

24.     To the extent that any entity did not timely file a Contract Objection by the Contract Objection Deadline with respect to any Assumed Agreement set forth on the Contract Notice, such entity shall forever be barred and estopped from objecting: (i) to the Cure Amount as the amount to cure all defaults to satisfy section 365 of the Bankruptcy Code and from asserting that any additional amounts are due or defaults exist; (ii) that any conditions to assumption and assignment must be satisfied under such Contract or Lease before it can be assumed and assigned or that any required consent to assignment has not been given; or (iii) that the Purchaser has not provided adequate assurance of future performance as contemplated by section 365 of the Bankruptcy Code. All Contract Objections that were timely filed by the Contract Objection Deadline have been withdrawn, have been resolved, or are overruled.

25.     The assumption and assignment of the Assumed Agreements is approved and each Assumed Agreement shall be assumed by the Debtor and assigned to Purchaser in its entirety. The Debtor is authorized to assume and assign each of the Assumed Agreements to the Purchaser upon the Closing of the Sale (or thereafter, in accordance with the Stalking Horse APA and this Order),

SALE MOTION
EXHIBIT A – PROPOSED ORDER

Free and Clear of all Liens, Claims and/or Interests, other than Permitted Exceptions and Assumed Liabilities. For the avoidance of doubt, the Purchaser's assumption of the Assumed Agreements shall include the assumption of any obligations under such Assumed Agreements arising after the Closing Date, subject in each case, to the rights of Purchaser against Debtor under the terms of the Stalking Horse APA. The payment of the applicable Cure Amounts by the Debtor, in accordance with the Stalking Horse APA shall, in accordance with section 365(b) of the Bankruptcy Code, (i) cure all defaults under the Assumed Agreements as contemplated by section 365 of the Bankruptcy Code as of the Closing Date, (ii) compensate for any actual pecuniary loss to such non-Debtor counterparty resulting from such default, and (iii) together with the assumption of the Assumed Agreements by the Debtor and the assignment of the Assumed Agreements to the Purchaser or an Affiliate of the Purchaser, constitute adequate assurance of future performance thereof.

26.     Pursuant to section 365(f) of the Bankruptcy Code, subject to the payment of the applicable Cure Amounts by the Debtor in accordance with the Stalking Horse APA, the Assumed Agreements to be assumed and assigned under the Stalking Horse APA shall be assumed by the Debtor and assigned and transferred to, and remain in full force and effect for the benefit of, the Purchaser notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer. Any provisions in any Assumed Agreement that purport to prohibit or condition the assignment of such Assumed Agreement or allow the counterparty to such Assumed Agreement to terminate, recapture, impose any penalty or fee, accelerate, increase any rate, condition on renewal or extension, or modify any term or condition upon the assignment of such Assumed Agreement constitute unenforceable anti-assignment provisions that are void and of no force and effect. Subject to the payment of the applicable Cure Amounts by the Debtor, all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Purchaser or an Affiliate of Purchaser of the Assumed Agreements have been satisfied. Subject to the payment of the applicable Cure Amounts by the Debtor upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all right, title, and interest of the Debtor under

- 14 -

the Assumed Agreements, and such Assumed Agreements shall remain in full force and effect for the benefit of the Purchaser. Subject to the payment of the applicable Cure Amounts by the Debtor, each non-Debtor counterparty to the Assumed Agreements shall be forever barred and estopped from (i) asserting against the Debtor or the Purchaser or their respective property any assignment fee, acceleration, default, breach, claim, pecuniary loss, or condition to assignment existing, arising, or accruing as of the Closing Date or arising by reason of the Closing, including any breach related to or arising out of any change-in-control provision in such Assumed Agreement, or any purported written or oral modification to such Assumed Agreement and (ii) asserting against the Purchaser (or its assets, including the Purchased Assets) or its Affiliates, designees, assignees, and/or successors (or their assets), any Liens, Claims and/or Interests, counterclaim, breach, condition, setoff (except with respect to setoffs that were effected prior to the Petition Date) asserted or capable of being asserted against the Debtor existing as of the Closing Date or arising by reason of the Closing except for the Permitted Exceptions and Assumed Liabilities.

27.     Upon the Closing and the payment of the relevant Cure Amounts, the Purchaser shall be deemed to be substituted for the Debtor as a party to the applicable Assumed Agreements and the Debtor shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Assumed Agreements. There shall be no assignment fees, increases, or any other fees charged to the Purchaser or the Debtor as a result of the assumption and assignment of the Assumed Agreements. The failure of the Debtor or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Agreement shall not be a waiver of such terms or conditions or of the right of the Debtor or the Purchaser, as the case may be, to enforce every term and condition of such Assumed Agreement. Any non-Debtor counterparty that may have had the right to consent to the assignment of any Assumed Agreement and did not object to the assignment of any Assumed Agreement is deemed to have consented to such assignment for the purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code.

28.     The assignments of each of the Assumed Agreements are made in good faith under sections 363(b) and (m) of the Bankruptcy Code and shall be Free and Clear of all Liens, Claims

Case: 21-51050   Doc# 28   Filed: 08/05/21   Entered: 08/05/21 22:08:26   Page 33 of 35

and/or Interests pursuant to section 363(f) of the Bankruptcy Code (except as provided in the Stalking Horse APA, solely with respect to Permitted Exceptions and Assumed Liabilities).

29.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014 or any other provisions of the Bankruptcy Rules, the Federal Rules of Civil Procedure, or the Local Rules stating the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry and no automatic stay shall apply to this Order.  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

30.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

31.     The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

32.     In the event there is any inconsistency between the Motion, the Bidding Procedures Order, the Stalking Horse APA, or this Order, this Order shall govern.

33.     The Court shall retain exclusive jurisdiction over any matters related to or arising from the implementation of this Order and to enter any Orders in aid or furtherance of this Order, and to adjudicate any and all remaining issues concerning the Debtor's right and authority to assume, assign and/or sell the Purchased Assets.


**END OF ORDER**


- 16 -

Case: 21-51050   Doc# 28   Filed: 08/05/21   Entered: 08/05/21 22:08:26   Page 34 of 35

1                                      **<u>Exhibit 1</u>**

2                                **Assumed Agreements**

SALE MOTION
EXHIBIT A – PROPOSED ORDER