The following constitutes the order of the Court.
Signed: September 3, 2021

_____
Stephen L. Johnson
U.S. Bankruptcy Judge

PAUL HASTINGS LLP
Todd M. Schwartz (Cal. Bar No. 288895)
Will Clark Farmer (Cal. Bar No. 329170)
1117 S. California Avenue,
Palo Alto, California 94304
Telephone: (650) 320-1800
Facsimile: (650) 320-1900
E mail   toddschwartz@paulhastings
         willfarmer@paulhastings.c

Nathan S. Gimpel (admitted *pro hac vice*)
Matthew Smart (admitted *pro hac vice*)
71 South Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100
E mail   nathangimpel@paulhastings.com
         matthewsmart@paulhastings.com

*Proposed Attorneys for Debtor and
Debtor in Possession*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| In re,<br><br>SVXR, Inc., a Delaware corporation,[1]<br><br>Debtor. | Case No. 21-51050 (SLJ)<br><br>Chapter 11<br><br>**FINAL ORDER:**<br><br>**(I) AUTHORIZING THE DEBTOR TO (A) OBTAIN SENIOR SECURED, POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1), AND 364(e), AND (B) UTILIZE CASH COLLATERAL OF PRE-PETITION SECURED PARTIES; (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS; (III) MODIFYING THE AUTOMATIC STAY; AND (IV) GRANTING RELATED RELIEF** |

---

[1] The last four digits of SVXR, Inc.'s federal tax identification number are (1893). The mailing address for SVXR, Inc. is 90 Bonaventura Drive, San Jose, CA 95134.

Upon the motion dated August 5, 2021 (the "Motion") of SVXR, Inc., as debtor and debtor in possession (the "Borrower," or the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), pursuant to sections 105, 361, 362, 363(c), 363(e), 364(c), and 364(d)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the local rules for the United States Bankruptcy Court for the Northern District of California (the "Local Rules"), and this Court's *Guidelines for Cash Collateral and Financing Motions and Stipulations*, seeking entry of an interim order ("Interim DIP Order") and a final order (this "Final Order"):

(1) authorizing the Debtor to obtain postpetition financing, consisting of senior secured superpriority term loans (the "DIP Loans") in an aggregate maximum amount of $2,000,000 (the "DIP Commitment"), from certain investment fund(s) managed by Legalist DIP GP, LLC (as lender, agent, and collateral agent, the "DIP Lender"), as provided in that certain Debtor-in-Possession Term Loan Credit Agreement, dated as of the date hereof, among the Debtor and the DIP Lender (the "DIP Credit Agreement"), and to incur the DIP Obligations contemplated thereby;

(2) authorizing the Debtor to execute and enter into, and to perform all acts necessary or desirable to consummate the transactions contemplated by the DIP Credit Agreement and other DIP Loan Documents;

(3) authorizing the Debtor to use the proceeds of the DIP Loans, as permitted in the DIP Loan Documents;

(4) providing that all DIP Obligations[2] shall, pursuant to section 364(c)(1) of the Bankruptcy Code, constitute DIP Superpriority Claims, payable from and having recourse to all property of the Debtor's estate;

(5) authorizing the Debtor to grant the DIP Lender automatically perfected DIP Liens (as defined below) in all DIP Collateral to secure payment of all DIP Obligations, comprising, pursuant to Bankruptcy Code section 364(d)(1), senior DIP Liens on all DIP Collateral subject to Existing Liens;

(6) vacating or modifying the automatic stay, pursuant to Bankruptcy Code section 362, to the extent necessary to (a) consummate the transactions contemplated by the DIP Loan Documents and (b) permit the DIP Lender to exercise any right or remedy provided therein;

---

[2] All defined terms shall have the meaning ascribed to them in the Motion or DIP Credit Agreement unless otherwise defined herein.

(7) vacating or modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim DIP Order and this Final Order;

(8) scheduling a final hearing (the "Final Hearing") to consider entry of the Final Order granting the relief requested in the Motion on a final basis and approving the form of notice with respect to the Final Hearing and the transactions contemplated by the Motion;

(9) waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of the Interim DIP Order and this Final Order and providing for the immediate effectiveness of the Interim DIP Order and this Final Order; and

(10) granting the Debtor such other and further relief as is just and proper; and

the Court having considered the Motion, the terms of the DIP Loans, the DIP Credit Agreement and the declarations of Daniel Trepanier (the "First Day Declaration") and Christopher T. Grubb (the "Grubb Declaration") filed in support of the Motion, and the evidence submitted at the interim hearing held before this Court on August 10, 2021 (the "Interim Hearing") to consider entry of the Interim DIP Order; and the Court having considered all objections and replies submitted before the Final Hearing, and the evidence submitted at the Final Hearing held before this Court on September 2, 2021 to consider entry of this Final Order; and in accordance with Bankruptcy Rule 4001(c)(2), due and proper notice of the Motion and the Final Hearing having been given; and it appearing that approval of the final relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor, and is otherwise fair and reasonable and in the best interests of the Debtor, its creditors and its estate, and essential for the continued operation of the Debtor's business; and all objections, if any, to the entry of this Final Order having been withdrawn, resolved, or determined by the Court orally at the Final Hearing; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

# THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]

### A. Petition Date

On August 4, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California, commencing this Chapter 11 Case.

### B. Debtor-in-Possession

The Debtor is continuing to operate its business and manage its properties as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Case.

### C. Jurisdiction; Venue

The Court has jurisdiction over this proceeding, pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.) and Local Rule 5011-1(a). Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Chapter 11 Case and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for the relief sought in the Motion and granted in this Final Order are sections 105(a), 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code, and Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, the Local Rules, and the Court's *Guidelines for Cash Collateral and Financing Motions and Stipulations*.

### D. Notice

The Court found notice of the Motion and Final Hearing was proper.

### E. Committee Formation

As of the date hereof, no statutory committee ("Committee") has been appointed in the Chapter 11 Case.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are adopted as such.

**F.      Permitted Prior Liens**

Nothing herein shall constitute a finding or ruling by the Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable. Moreover, nothing herein shall prejudice the rights of any party in interest, including, but not limited to the Debtor or the DIP Lender, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien.

**G.      Immediate Need for Postpetition Financing**

The Debtor has requested immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(c)(2) and the Local Rules. Good cause has been shown for immediate entry of this Final Order pursuant to such rules. The Debtor is unable to obtain unsecured credit under Bankruptcy Code section 503 or other postpetition financing in the amount of the DIP Commitment on terms more favorable than those provided by the DIP Lender. An immediate and ongoing need exists for the Debtor to obtain funds and liquidity in the amount of the DIP Commitment in order to, as the case may be, continue operations, to pay the costs and expenses of administering the Chapter 11 Case, and to administer and preserve the value of its business and estate. The ability of the Debtor to finance its operations and the contemplated auction sale process, to preserve and maintain the value of its assets, and to maximize the return for all creditors requires the availability of the DIP Loans, because, among other reasons, the Debtor does not otherwise have sufficient funds available to pay administrative expenses in this case. In the absence of the availability of such funds and liquidity in accordance with the terms hereof, the continued operation of the Debtor's business may not be possible, and serious and irreparable harm to the Debtor and its estate, creditors and other stakeholders would occur. Thus, the ability of the Debtor to preserve and maintain the value of its assets and maximize the return for creditors requires the availability of working capital from the DIP Loans.

**H.      No Credit Available on More Favorable Terms**

The Debtor has been unable to obtain (a) adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or (b) credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or

507(b) of the Bankruptcy Code. The Debtor has been unable to obtain credit for borrowed money without granting the DIP Liens, the DIP Superpriority Claims (defined below) and certain other protections set forth herein to (or for the benefit of) the DIP Lender. Moreover, the Debtor was unable to obtain financing from sources other than the DIP Lender on more favorable terms and conditions than the terms and conditions of the DIP Loans.

### I. **Extension of Financing**

The DIP Lender is willing to provide financing to the Debtor in accordance with the DIP Credit Agreement, subject to (i) the entry of the Interim DIP Order and this Final Order, including, among other things, approval of the benefits and protections for the DIP Lender contained herein, (ii) approval of the DIP Credit Agreement, and (iii) findings by this Court that such financing is essential to the Debtor's estate and the continued operation of the Debtor, that the DIP Lender is a good faith financier, and that the DIP Lender's superpriority claims, security interests and liens and other protections granted pursuant to and in connection with the Interim DIP Order and this Final Order and the DIP Loans (including the DIP Superpriority Claim and the DIP Liens), will not be affected by any subsequent reversal, modification, vacatur, stay or amendment of, as the case may be, the Interim DIP Order, this Final Order, or any other order, as provided in section 364(e) of the Bankruptcy Code.

### J. **Business Judgment and Good Faith Pursuant to Section 364(e)**

i. The DIP Credit Agreement is the result of a competitive process conducted by the Debtor, along with its advisors. The Debtor, in consultation with its advisors, concluded that the DIP Loans represent the best available financing under the circumstances. The DIP Credit Agreement was negotiated in good faith and at arm's length among the Debtor and the DIP Lender. The terms and conditions of the DIP Credit Agreement, and the fees to be paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and constitute reasonably equivalent value and consideration.

ii. All obligations incurred, payments made, and transfers or grants of security set forth in the Interim DIP Order, this Final Order, and the DIP Credit Agreement by the Debtor or the DIP Lender are granted to or for the benefit of the Debtor or the DIP Lender for fair consideration and reasonably equivalent value, and are granted contemporaneously with the making of the loans and/or commitments and other financial accommodations secured thereby.

iii. The credit to be extended under the DIP Credit Agreement and the DIP Loans shall be deemed to be extended by the DIP Lender in good faith and for valid business purposes and uses, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Lender (and its successors and assigns) is entitled to the full protection and benefits of section 364(e) of the Bankruptcy Code whether or not the Interim DIP Order, this Final Order, or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

### K. Relief Essential; Best Interest

The relief requested in the Motion (and provided in the Interim DIP Order and this Final Order) is necessary, essential and appropriate for the continued operation of the Debtor's business, the management and preservation of its assets and property, and the administration of this Chapter 11 Case. It is in the best interest of the Debtor's estate that the Debtor be allowed to enter into the DIP Credit Agreement, incur the DIP Obligations and grant the liens and claims contemplated in the DIP Credit Agreement, in the Interim DIP Order and this Final Order, and under the DIP Credit Agreement to the DIP Lender.

### L. Adequate Protection

No adequate protection is necessary in order to protect the Pre-Petition Secured Parties from the diminution in value of the DIP Collateral.

**NOW, THEREFORE,** on the Motion of the Debtor and the record before this Court with respect to the Motion, including the record made during the Interim DIP Hearing, the Final DIP Hearing, and the First Day Declaration and the Grubb Declaration, and with the consent of the Debtor and the DIP Lender, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1. **Motion Granted.** The Motion is hereby granted on a final basis in accordance with the terms and conditions set forth in this Final Order. Any objections to the Motion with respect to entry of this Final Order to the extent not withdrawn or otherwise resolved, and all reservation of rights included therein, are hereby denied or determined as set forth by the Court orally at the Final Hearing.

2. **Authorization of the DIP Loans.** The execution and delivery of the DIP Credit Agreement and all other DIP Loan Documents by the Debtor is authorized and approved, and the Debtor is authorized and empowered to (a) execute and deliver to the DIP Lender all other documents and instruments necessary or desirable to consummate the transactions contemplated thereby, (b) take all other actions necessary or desirable to carry out the intent and purpose of the DIP Loan Documents, and (c) otherwise comply with the DIP Loan Documents and all requests of the DIP Lender thereunder.

3. **Authorization to Borrow Under the DIP Loans.** Pursuant to this Final Order, the Debtor is authorized to borrow up to $2,000,000 of the DIP Commitment in DIP Loans in one or more DIP Draws on the terms of the DIP Loan Documents, without application to or further order by the Court.

4. **Authorization to Access and Use Cash Collateral.** The Debtor is authorized to access and use Cash Collateral to manage the administration of the Chapter 11 Case and auction sale process, and support the continuity of the Debtor's operations.

5. **Payment of DIP Lender Expenses and Fees.** All interest, fees, and expenses (expressly including all DIP Lender Expenses) contemplated by the DIP Loan Documents are authorized to be incurred by the Debtor as DIP Obligations and approved for payment as DIP Superpriority Claims, without application to or further order by the Court.

6. **DIP Superpriority Claim.** All DIP Obligations, pursuant to Bankruptcy Code section 364(c)(1), constitute DIP Superpriority Claims, payable from and having recourse to all property of the Debtor's estate (expressly including all DIP Collateral[4]); <u>provided</u> that, in the event of conversion to Chapter 7, with respect to the proceeds of Avoidance Actions, the DIP Superpriority Claims shall be subject to the payment of Chapter 7 administrative expenses.

7. **DIP Liens.** The DIP Lender holds security interests in and liens on all DIP Collateral[5], which the Debtor has (to the extent of its right, title, and interest therein) assigned and conveyed as security, hypothecated, mortgaged, pledged, and set over and unto the DIP Lender,

---

[4] DIP Collateral does not include Avoidance Actions or any proceeds of Avoidance Actions.
[5] *See* n.4 *supra*.

and which have been automatically perfected notwithstanding any notice or recordation requirements of non-bankruptcy law (collectively, the "DIP Liens"), comprising, pursuant to Bankruptcy Code section 364(d)(1), senior DIP Liens on all DIP Collateral subject to Existing Liens.

8. **Restriction on Use of DIP Lender's Funds.** The proceeds of the DIP Loans shall be used by the Debtor exclusively to (a) pay DIP Lender Expenses, (b) pay all other DIP Obligations, and (c) pay other amounts permitted under the Budget; provided that no portion of the DIP Loans shall be used for fees, costs, or expenses incurred by any party in (x) investigating or pursuing any claim or cause of action against the DIP Lender, any Affiliate thereof, or any other Indemnified Person or (y) questioning or challenging, or taking any other action that could reasonably be expected otherwise to impair, any DIP Loans, DIP Liens, DIP Superpriority Claims, DIP Obligations, DIP Loan Documents, or right or remedy of the DIP Lender.

9. **DIP Credit Agreement Covenants.** So long as any DIP Obligation remains outstanding, the Debtor shall perform each covenant contained in the DIP Loan Documents (other than those covenants that, under the DIP Loan Documents, shall survive full and indefeasible payment of the DIP Obligations).

10. **Termination.** The DIP Loans shall mature, and all DIP Obligations shall be immediately due and payable upon the Maturity Date.

11. **Event of Default.** An Event of Default shall exist during the occurrence and continuation of each of the events so identified in the DIP Loan Documents.

12. **Automatic Stay.** Notwithstanding Bankruptcy Code section 362, while any Event of Default has occurred and is continuing, the DIP Lender may immediately, without further order of or application to the Bankruptcy Court:

    (i)    Declare the DIP Commitment terminated; and

    (ii)    Declare all DIP Obligations immediately due and payable, without the requirement of presentment, demand, protest, or any other notice, all of which are waived by the Debtor;

13. Furthermore, while any Event of Default has occurred and is continuing, the DIP Lender may move or apply to the Bankruptcy Court for entry of an order:

    (i) Terminating the automatic stay with respect to any DIP Collateral;

    (ii) Terminating the Debtor's exclusivity to propose a chapter 11 plan;

    (iii) Appointing an examiner or chapter 11 trustee; and

    (iv) Converting the Debtor's Case to chapter 7;

provided that if the DIP Lender so moves or applies, the Debtor shall be limited to contesting solely whether the Event of Default has occurred and/or is continuing, and the Debtor has expressly waived the right to contest such relief whatsoever beyond the foregoing limitation.

14. The automatic stay imposed by Bankruptcy Code section 362(a) is and shall remain modified to the extent necessary to implement and effectuate in full this Final Order and the other DIP Loan Documents (expressly including any exercise of rights and remedies by the DIP Lender) and the transactions contemplated thereby.

15. **Additional Remedies.** In addition to the rights and remedies enumerated in Paragraphs 11 and 12, the DIP Lender shall be entitled, while any Event of Default has occurred and is continuing, to pursue all rights and remedies available to it under the Bankruptcy Code (whether as a creditor, party in interest, or otherwise) or as a secured party under the Uniform Commercial Code. For the avoidance of doubt, all costs incurred by the DIP Lender in connection with any default or Event of Default under any DIP Loan Document shall constitute DIP Lender Expenses and DIP Obligations for all purposes.

16. **Limitation on Charging Expenses Against Collateral.** In consideration of the DIP Lender's (a) consent to the current payment of administrative expenses of the Debtor's estate to the extent of the Budget and (b) concessions with respect to the Carve-Out (defined below), as described Paragraph 17, the DIP Lender is entitled to a waiver, with respect to all parties, of Bankruptcy Code section 506(c) during the period in which the Debtor is authorized to use cash collateral and borrow under the terms of the DIP Loan Documents (the "Financing Period"), and in no event shall the DIP Lender, the DIP Obligations, or the DIP Collateral be subject to any "surcharge" or the doctrine of "marshalling" by any party in any way during the Financing Period.

17. **Carve-Out.** Upon the delivery (by email or otherwise) by the DIP Lender of written notice to the Debtor, the Debtor's bankruptcy counsel, the United States Trustee, and lead counsel for the Committee, if any, of the occurrence and continuance of an Event of Default under and as defined in the DIP Credit Agreement (the "Carve-Out Trigger"), the DIP Liens and DIP Superpriority Claims shall be subject to the payment of: (i) all fees required to be paid to the clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United State Code (plus interest at the statutory rate) for the period up to the occurrence of a Carve-Out Trigger (as defined below), (ii) the documented and unpaid fees, costs and expenses that were accrued or incurred prior to the Carve-Out Trigger by each person or firm retained by the Debtor and the Committee, if any, as an estate professional (collectively, the "Professionals") for the benefit of such Professional and payable under sections 330 and 331 of the Bankruptcy Code, to the extent allowed by an order of this Court (whether allowed prior to or after the occurrence of the Carve-Out Trigger), subject to the terms of this Final Order and any other orders entered by this Court; (iii) reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code not to exceed $20,000; and (iv) up to a maximum amount of $200,000 of unpaid documented fees, costs and expenses accrued or incurred by Professionals following the occurrence of the Carve-Out Trigger, payable under sections 330 and 331 of the Bankruptcy Code and subsequently allowed by order of this Court (collectively, the "Carve-Out"); provided, however, that no portion of the Carve-Out, DIP Loans, or DIP Collateral shall include, apply to, or be available for any fees, costs or expenses incurred by any party, including the Debtor or any Committee, in connection with (a) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the DIP Lender, including, without limitation, (i) challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the DIP Credit Agreement, DIP Obligations, DIP Superpriority Claims or DIP Liens in respect thereof, (ii) asserting any claims or causes of action, including, without limitation, claims or actions to hinder or delay the DIP Lender's assertion, enforcement or realization on the DIP Collateral in accordance with the DIP Credit Agreement or this Final Order. So long as a Carve-Out Trigger has not occurred: (i) the Debtor shall be permitted

to pay administrative expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code, as the same may become due and payable; and (ii) such payments shall not be applied to reduce the Carve-Out (to the extent such payments are ultimately permitted by the Court); **provided, however**, that following a Carve-Out Trigger any amounts actually paid to Professionals by any means will reduce the Carve-Out on a dollar-for-dollar basis. Notwithstanding the foregoing, nothing contained herein is intended to constitute, nor should be construed as consent to, the allowance of any Professional's fees, costs or expenses by any party and shall not affect the right of the Debtor, the DIP Lender, any Committee, the United States Trustee, or any other party-in-interest to object to the allowance and payment of any amounts incurred or requested. Furthermore, none of the Carve-Out, DIP Collateral, Cash Collateral or any proceeds of the DIP Loans shall be used to prevent, hinder or delay the DIP Lender from enforcing or realizing upon the DIP Collateral once an Event of Default (under and as defined in the DIP Credit Agreement) has been determined by the Court to have occurred and to be continuing under the DIP Credit Agreement or this Final Order. For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order or in the DIP Credit Agreement, the Carve-Out shall be senior to all liens and claims securing the DIP Loans, and any and all other forms of liens or claims securing the DIP Obligations. Further, any and all amounts owed to Professionals pursuant to this Paragraph 17, including but not limited to the documented and unpaid fees, costs and expenses that were accrued or incurred prior to the Carve-Out Trigger, and unpaid documented fees, costs, and expenses accrued or incurred by Professionals following the occurrence of the Carve-Out Trigger, shall not be subject to any cash sweep and/or foreclosure provisions in the DIP Credit Agreement and the DIP Lender shall not be entitled to sweep or foreclose on such amounts notwithstanding any provision to the contrary in the DIP Credit Agreement.

18. **Protection Under Section 364(e).** Any stay, modification, reversal, or vacation of this Final Order shall not, in any way whatsoever, affect any DIP Loans, DIP Liens, DIP Superpriority Claims, DIP Obligations, other DIP Loan Documents, or right or remedy of the DIP Lender. Notwithstanding any such stay, modification, reversal, or vacation, all DIP Loans, DIP Liens, DIP Superpriority Claims, DIP Obligations, other DIP Loan Documents, and rights and

remedies of the DIP Lender made, available, and/or in effect prior to the effective date of such stay, modification, reversal, or vacation shall be governed in all respects by this Final Order as originally entered by the Court. The DIP Lender is entitled to and shall have in all cases the protections of Bankruptcy Code section 364(e) with respect to all DIP Loans, DIP Liens, DIP Superpriority Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies and shall be so protected notwithstanding any stay, modification, reversal, or vacation of this Final Order.

19. **Survival.** This Final Order shall survive entry of any order, in this Court or any other court of competent jurisdiction, (a) confirming a chapter 11 plan (and, to the extent not satisfied in full in cash on the effective date thereof, the DIP Obligations shall not be discharged under or by entry of such order, notwithstanding Bankruptcy Code section 1141(d)), (b) appointing an examiner or chapter 11 trustee, (c) converting the Case to a case under Bankruptcy Code chapter 7, or (d) dismissing the Case. This Final Order, together with all DIP Loans, DIP Liens, DIP Superpriority Claims, DIP Obligations, other DIP Loan Documents, and rights and remedies of the DIP Lender shall continue in full force and effect, notwithstanding the entry of any such order, until full and indefeasible payment of all DIP Obligations.

20. **Controlling Effect of Final Order.** In the event of any inconsistency between any other DIP Loan Document and this Final Order, the terms hereof shall govern.

21. **Order Effective.** Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9014, or anything else in the Bankruptcy Rules or any other applicable rule of procedure, this Final Order shall be valid, take full effect, and be enforceable immediately upon entry hereof. There shall be no stay of execution or effectiveness of this Final Order, all of which are hereby waived for cause shown. This Final Order shall be effective as of the date of the signature by the Court.

22. **Court Retains Jurisdiction.** The Court has and shall retain jurisdiction to enforce this Final Order, including to hear any motion or application by the DIP Lender related hereto or to any other DIP Loan Document, according to its terms.

23. **Findings of Fact and Conclusions of Law.** This Final Order, as supplemented by the Court orally at the hearing, constitutes, where applicable, findings of fact and

conclusions of law and shall take effect and be fully enforceable immediately upon the execution thereof.

24. **Choice of Law.** The DIP Loans and the DIP Credit Agreement (and the rights and obligations of the parties thereto) shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York, and, to the extent applicable, the Bankruptcy Code.

25. **Authorized Signatories.** The signature of any Authorized Officer (as defined in the Debtor's corporate resolutions filed with the Petition) or Debtor's attorneys, appearing on the DIP Credit Agreement shall be sufficient to bind the Debtor. No board of directors or other approval shall be necessary.

Approved as to form and substance,

*/s/ Jason Blumberg*
Jason Blumberg
Trial Attorney for the United States Trustee

**END OF ORDER**